IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| John Doe and Jane Doe 1 through 20,<br>John Doe and Jane Doe A through K,<br>Doe 12 on behalf of Does H and K, minors, and<br>Doe G on behalf of Doe I, minor,<br><br>                  Plaintiffs,<br><br>  vs.<br><br>State of Nebraska;<br><br>Nebraska State Patrol;<br><br>Jon Bruning, Attorney General of Nebraska;<br><br>Col. Bryan Tuma, Superintendant of Law Enforcement and Public Safety for the Nebraska State Patrol;<br><br>County Attorneys Donna Fegler Daiss (Adams), Michael Long (Antelope), Richard Roberts (Arthur), James L. Zimmerman (Banner), Glenn Clark (Blaine), John Morgan (Boone), Kathleen J. Hutchinson (Box Butte) Ashley Boettcher (Boyd), David M. Streich (Brown), Shawn R. Eatherton (Buffalo), Daniel A. Smith (Burt), Julie L. Reiter (Butler), Nathan Cox (Cass), George L. Hirschbach (Cedar), Arlan G. Wine (Chase), Eric Scott (Cherry), Paul B. Schaub (Cheyenne), Ted S. Griess (Clay), Francis D. Botelho (Colfax), Thomas B. Donner (Cuming), Tami Schendt (Custer), Kim W. Watson (Dakota), Vance Haug (Dawes), Elizabeth F. Waterman (Dawson), Douglas D. Palik (Deuel), Leland K. Miner (Dixon), Paul J. Vaughan (Dodge), Donald W. Kleine (Douglas), James D. Owens (Dundy), Jill R. Cunningham (Fillmore), Patrick A. Duncan (Franklin), Jon S. Schroeder (Frontier), Tom Patterson (Furnas), Randall Ritnour (Gage), Philip E. Pierce (Garden), Dale Crandall (Garfield), Todd D. Wilson (Gosper), A. James Moravek (Grant), James Swanson (Greeley), Mark Young (Hall), Michael H. Powell (Hamilton), Bryan S. McQuay (Harlan), Joel W. Phillips (Hayes), D. Eugene Garner (Hitchcock), Thomas P. Herzog (Holt), George G. Vinton (Hooker), David T. Schroeder (Howard), Linda A. | **42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLAIM OF UNCONSTITUTIONALITY**<br><br>**JURY TRIAL DEMANDED** |

Bauer (Jefferson), Julie Smith Hogancamp (Johnson), David
G. Wondra (Kearney), Blake Edwards (Keith), Eric Scott
(Keya Paha), David L. Wilson (Kimball), John Thomas
(Knox), Gary Lacey (Lancaster), Rebecca R. Harling
(Lincoln), Steve Vinton (Logan), Jason White (Loup),
Joseph M. Smith (Madison), Tim Brouillette (McPherson),
Steven M. Curry (Merrick), Jean Rhodes (Morrill), Rodney
Wetovick (Nance), Louie M. Ligouri (Nemaha), Timothy S.
Schmidt (Nuckolls), David J. Partsch (Otoe), Victor Faesser
(Pawnee), Richard H. Roberts (Perkins), Timothy E. Hoeft
(Phelps), Verlyn Luebbe (Pierce), Sandra J. Allen (Platte),
Ronald E. Colling (Polk), Paul Wood (Red Willow),
Douglas E. Merz (Richardson), Avery L. Gurnsey (Rock),
Tad D. Eickman (Saline), Lee Polikov (Sarpy), Scott J.
Tingelhoff (Saunders), Tiffany Wasserburger (Scottsbluff),
Wendy L. Elston (Seward), Dennis King (Sheridan), Mark
L. Eurek (Sherman), J. Adam Edmund (Sioux), W. Bert
Lammli (Stanton), Daniel L. Werner (Thayer), Warren R.
Arganbright (Thomas), Tammy Maul-Bodlak (Thurston),
Glenn Clark (Valley), Shurie R. Graeve (Washington),
Michael E. Pieper (Wayne), Jerry McDole (Webster), James
J. McNally (Wheeler), Tim Sieh (York);

County Sheriffs Greg Magee (Adams), Darrell Hamilton
(Antelope), Bill Simpson (Arthur), K. Patrick Mooney
(Banner), Tim Sierks (Blaine), David Spiegel (Boone),
Tammy Mowry (Box Butte), David Derickson (Boyd),
Steve Hapner (Brown), Neil A. Miller (Buffalo), Robert
Pickell (Burt), Mark Hecker (Butler), William Brueggeman
(Cass), Larry Koranda (Cedar), Timothy Sutherland
(Chase), Melvin Christensen (Cherry), Darrell Johnson
(Cheyenne), Jeff Franklin (Clay), Paul J. Kruse (Colfax),
Bradley Boyum (Cuming), Ted Henderson (Custer), James
L. Wagner (Dakota), Karl Dailey (Dawes), Gary Reiber
(Dawson), Jeffrey S. Ortgies (Deuel), Dean Chase (Dixon),
Steve Hespen (Dodge), Timothy F. Dunning (Douglas),
Robert S. McBride (Dundy), William Burgess (Fillmore),
Jerry L. Archer (Franklin), Daniel Rupp (Frontier), Kurt
Kapperman (Furnas), Millard "Gus" Gustafson (Gage),
Doug Miller (Garden), Larry D. Donner (Garfield), Dennis
Ocken (Gosper), Shawn Hebbert (Grant), David C. Weeks
(Greeley), Jerry Watson (Hall), Kirk W Handrup
(Hamilton), Chris Becker (Harlan), Thomas Dow (Hayes),
Bryan Leggott (Hitchcock), Ben Matchett (Holt), Lynn

Nichols (Hooker), Harold Schenck (Howard), Nels
Sorensen (Jefferson), James P Wenzl (Johnson), Scott K.
White (Kearney), Kevin Mueller (Keith), Jeff Kirsch (Keya
Paha), Harry J. Gillway (Kimball), James F. Janecek
(Knox), Terry Wagner (Lancaster), Jerome Kramer
(Lincoln), Patrick McNeil (Logan), Kirby Holloway (Loup),
Vern Hjorth (Madison), John Haller (McPherson), Anthony
McPhillips (Merrick), John Edens (Morrill), Davis Moore
(Nance), Brent Lottman (Nemaha), James R Marr
(Nuckolls), James Gress (Otoe), Jayme Reed (Pawnee),
James D. Brueggeman (Perkins), Tom Nutt (Phelps), Rick
Eberhardt (Pierce), John Zavadil (Platte), Dwaine W.
Ladwig (Polk), Gene Mahon (Red Willow), Vernon
Buckminster (Richardson), Willis Haynes (Rock), Alan
Moore (Saline), Jeff Davis (Sarpy), Kevin Stukenholtz
(Saunders), Jim K. Lawson (Scotts Bluff), Joe Yocum
(Seward), Terry Robbins (Sheridan), Michael F. Janulewicz
(Sherman), William Roe (Sioux), Michael Unger (Stanton),
David Lee (Thayer), Gary Eng (Thomas), Chris Kleinberg
(Thurston), Casey D. Hurlburt (Valley), Michael Robinson
(Washington), LeRoy W Janssen (Wayne), Troy Schmitz
(Webster), Adrian Lindsey (Wheeler), Dale Radcliff (York);

Police Chiefs Thomas K. Casady (Lincoln), Alex Hayes
(Omaha), Leonard Houloose (Papillion), Timothy S. Mullen
(Fremont), Lester E. Johnson (Bennington), Ron Murtaugh
(Ralston), William Gumm (Columbus), Donald Klug
(York);

Defendants.

COME NOW the Plaintiffs, by and through their counsel of record, and hereby submit
their Complaint for declaratory and injunctive relief.  This action is brought pursuant to 42
U.S.C. § 1983 to challenge the constitutionality of the Nebraska Sex Offender Registration Act,
Neb. Rev. Stat. § 29-4001 *et seq*., as modified by LB 97 and LB 285.

On May 20, 2009, Gov. David Heinemann signed LB 97 into law.  It became effective as
of May 21, 2009.  It modified the then-existing version of the Nebraska Sex Offender
Registration Act.  On May 26, 2009, LB 285 was signed into law, but it will not take effect until
January 1, 2010.  LB 285 amended portions of LB 97, and further modified the Nebraska Sex

Offender Registration Act.  LB 285 also included the creation of a new crime, the unlawful use of the internet by a prohibited sex offender.  These two bills together, along with the unchanged portions of the previous act, constitute the current version of the Nebraska Sex Offender Registration Act (hereafter the "New Act").[1]

The New Act represents a significant departure from the previous sex offender registry, infringing on core constitutional rights guaranteed by the United States and Nebraska Constitutions, to wit: by imposing retroactive criminal punishment for past acts; by twice punishing a single offense; by imposing a cruel and unusual punishment; by permitting a continuous and unreasonable search and seize by law enforcement; by violating the right to due process; by violating the right to equal protection of the law and constituting special legislation; by violating the right to free speech; by substantially impairing the contractual plea agreements entered into by some Plaintiffs; and by violating the separation of powers mandated by the Nebraska Constitution.

## JURISDICTION AND VENUE

1.   Subject matter jurisdiction over the federal constitutional issues is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental subject matter jurisdiction over the state law issues pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction to order injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  All parties reside in Nebraska.

---

1 The specific statues that are challenged by Plaintiffs are: Neb. Rev. Stat. §§ 29-4001.01 through 4006, and 4009 through 4013 (now constituting an *ex post facto* statutory scheme); Neb. Rev. Stat. § 29-4006 (now permitting an unreasonable search and seizure by law enforcement); Neb. Rev. Stat. § 29-4009 and 4013 (now eliminating the individual assessment to determine the level of community notification and imposing website notification for all registrants); Neb. Rev. Stat. § 29-4001.01 (now providing for vague definitions used throughout rendering the New Act susceptible to arbitrary enforcement and noncompliance); Neb. Rev. Stat. § 28-322.05 (now criminalizing certain types of speech for some registrants and infringing on the right to association); Neb. Rev. Stat. §§ 29-4001.01 through 4006, and 4009 through 4013 (now constituting a modification of the terms and conditions of plea agreements and a violation of separation of powers).

## PARTIES

3.  John Doe 1 resides in Douglas County, Nebraska.  He was convicted of a sexual offense in 1996 and is currently not on the registry.

4.  John Doe 2 resides in Douglas County, Nebraska.  He was convicted of sexual offenses in 1999 and 2004 and is currently a Level II registered sex offender.

5.  John Doe 3 is a resident of Douglas County, Nebraska.  He was convicted of a sexual offense in 2001 and is currently a Level I registered sex offender.

6.  John Doe 4 is a resident of Douglas County, Nebraska.  He was convicted of a sexual offense in 2002 and is currently a Level II registered sex offender.

7.  John Doe 5 is a resident of Stanton County, Nebraska.  He was convicted of a sexual offense in 2000 and is currently a Level III registered sex offender.

8.  John Doe 6 is a resident of Sarpy County, Nebraska.  He was convicted of a sexual offense in 1999 and is currently a Level III registered sex offender.

9.  John Doe 7 is a resident of Dodge County, Nebraska.  He was convicted of a sexual offense in 2005 and is currently a Level I registered sex offender.

10.  John Doe 8 is a resident of York County, Nebraska.  He was convicted of a sexual offense in 1989 and is currently a Level III registered sex offender.

11.  John Doe 9 is a resident of Douglas County, Nebraska.  He was convicted of a sexual offense in 2005 and is currently a Level I registered sex offender.

12.  Jane Doe 10 is a resident of Lancaster County, Nebraska.  She was convicted of a sexual offense in 2004 and is currently a Level I registered sex offender.

13.  John Doe 11 is a resident of Saunders County, Nebraska.  He was convicted of a sexual offense in 2000 and is currently a Level I registered sex offender.

14.  John Doe 12 is a resident of Douglas County, Nebraska.  He was convicted of sexual offenses in 2001 and 2004 and is currently a Level II registered sex offender.  He brings this action on his own behalf and on behalf of Jane Doe H and John Doe K as their parent, guardian and next friend.

15.  John Doe 13 is a resident of Polk County, Nebraska.  He was convicted of a sexual

5

offense in 2005 and is currently a Level II registered sex offender.

16.     John Doe 14 is a resident of Douglas County, Nebraska.  He was convicted of a sexual offense in 1994 and is currently a Level II registered sex offender.

17.     John Doe 15 is a resident of Platte County, Nebraska.  He was convicted of a sexual offense in 1998 and is currently a Level III registered sex offender.

18.     John Doe 16 is a resident of Douglas County, Nebraska.  He was convicted of a sexual offense in 2006 and is currently a Level II registered sex offender.

19.     John Doe 17 is a resident of Lancaster County, Nebraska.  He was convicted of a sexual offense in 2004 and is currently a Level II registered sex offender.

20.     John Doe 18 is a resident of Douglas County, Nebraska.  He was convicted of a sexual offense in 2001 and is currently a Level II registered sex offender.

21.     John Doe 19 is a resident of Nebraska.  He was convicted of a sexual offense in 2001 and is currently a Level II registered sex offender.

22.     John Doe 20 is a resident of Douglas County, Nebraska.  He was convicted of a nonsexual offense in 1994 and is currently a Level III registered sex offender.

23.     Jane Doe A is a resident of York County, Nebraska.  She is married to John Doe 8 and resides with him in their marital home.

24.     Jane Doe B is a resident of Douglas County, Nebraska.  She is married to John Doe 16 and resides with him in the marital home.

25.     John Doe C is a resident of Lancaster County, Nebraska.  He is an attorney who employs Jane Doe 10.

26.     Jane Doe D is a resident of Stanton County, Nebraska.  She is the mother of John Doe 5, and lives in the same residence as Doe 5.

27.     John Doe E resides in Nebraska.  He owns a business and employs Doe 12 as a computer consultant for the database and website used by the business.

28.     John Doe F is a resident of Lancaster County, Nebraska.  He owns a computer/internet conferencing company and employs Doe 17, his son.

29.     Jane Doe G is a resident of Douglas County, Nebraska.  She is married to and is business

6

partners with Doe 12.  Doe G brings this action on her own behalf and on behalf of Jane Doe I as her parent, guardian and next friend.

30.    Jane Doe H is a resident of Douglas County, Nebraska and the minor daughter of Doe 12. Doe H visits Doe 12 at his residence regularly, and he visits and conducts business in the home in which she resides.

31.    Jane Doe I is a resident of Douglas County, Nebraska and the minor daughter of Doe G. Doe I visits Doe 12 at his residence regularly, and he visits and conducts business in the home in which she resides.

32.    John Doe J is a resident of Douglas County, Nebraska and the son of Doe 12.  Doe J visits Doe 12 at his residence regularly, and Doe 12 visits and conducts business in the home in which Doe J resides.

33.    John Doe K is a resident of Douglas County, Nebraska and the minor son of Doe 12. Doe K visits Doe 12 at his residence regularly, and Doe 12 visits and conducts business in the home in which Doe K resides.

34.    Defendant State of Nebraska is a sovereign, independent state of the United States of America.

35.    Defendant Nebraska State Patrol is an agency of the State of Nebraska.  It is responsible for the enforcement of criminal and motor vehicle laws within the state, and it is responsible for the administration of the sex offender registry and community notification in Nebraska.

36.    Defendant Jon Bruning, Attorney General of Nebraska, is the authorized legal representative for the State of Nebraska and is responsible for the enforcement of laws and prosecution of crimes throughout the State.  He is sued in his official capacity.

37.    Defendant Col. Bryan Tuma is Superintendant of Law Enforcement and Public Safety for the Nebraska State Patrol.  He is sued in his official capacity.

38.    Defendants Donna Fegler Daiss (Adams), Michael Long (Antelope), Richard Roberts (Arthur), James L. Zimmerman (Banner), Glenn Clark (Blaine), John Morgan (Boone), Kathleen J. Hutchinson (Box Butte), Ashley Boettcher (Boyd), David M. Streich

(Brown), Shawn R. Eatherton (Buffalo), Daniel A. Smith (Burt), Julie L. Reiter (Butler), Nathan Cox (Cass), George L. Hirschbach (Cedar), Arlan G. Wine (Chase), Eric Scott (Cherry), Paul B. Schaub (Cheyenne), Ted S. Griess (Clay), Francis D. Botelho (Colfax), Thomas B. Donner (Cuming), Tami Schendt (Custer), Kim W. Watson (Dakota), Vance Haug (Dawes), Elizabeth F. Waterman (Dawson), Douglas D. Palik (Deuel), Leland K. Miner (Dixon), Paul J. Vaughan (Dodge), Donald W. Kleine (Douglas), James D. Owens (Dundy), Jill R. Cunningham (Fillmore), Patrick A. Duncan (Franklin), Jon S. Schroeder (Frontier), Tom Patterson (Furnas), Randall Ritnour (Gage), Philip E. Pierce (Garden), Dale Crandall (Garfield), Todd D. Wilson (Gosper), A. James Moravek (Grant), James Swanson (Greeley), Mark Young (Hall), Michael H. Powell (Hamilton), Bryan S. McQuay (Harlan), Joel W. Phillips (Hayes), D. Eugene Garner (Hitchcock), Thomas P. Herzog (Holt), George G. Vinton (Hooker), David T. Schroeder (Howard), Linda A. Bauer (Jefferson), Julie Smith Hogancamp (Johnson), David G. Wondra (Kearney), Blake Edwards (Keith), Eric Scott (Keya Paha), David L. Wilson (Kimball), John Thomas (Knox), Gary Lacey (Lancaster), Rebecca R. Harling (Lincoln), Steve Vinton (Logan), Jason White (Loup), Joseph M. Smith (Madison), Tim Brouillette (McPherson), Steven M. Curry (Merrick), Jean Rhodes (Morrill), Rodney Wetovick (Nance), Louie M. Ligouri (Nemaha), Timothy S. Schmidt (Nuckolls), David J. Partsch (Otoe), Victor Faesser (Pawnee), Richard H. Roberts (Perkins), Timothy E. Hoeft (Phelps), Verlyn Luebbe (Pierce), Sandra J. Allen (Platte), Ronald E. Colling (Polk), Paul Wood (Red Willow), Douglas E. Merz (Richardson), Avery L. Gurnsey (Rock), Tad D. Eickman (Saline), Lee Polikov (Sarpy), Scott J. Tingelhoff (Saunders), Tiffany Wasserburger (Scottsbluff), Wendy L. Elston (Seward), Dennis King (Sheridan), Mark L. Eurek (Sherman), J. Adam Edmund (Sioux), W. Bert Lammli (Stanton), Daniel L. Werner (Thayer), Warren R. Arganbright (Thomas), Tammy Maul-Bodlak (Thurston), Glenn Clark (Valley), Shurie R. Graeve (Washington), Michael E. Pieper (Wayne), Jerry McDole (Webster), James J. McNally (Wheeler), Tim Sieh (York) are the County Attorneys for the 93 counties in Nebraska, responsible for the prosecution of crimes in

their respective counties, hereafter referred to as "County Attorneys." Each County Attorney is sued in his or her official capacity.

39.    Pursuant to Neb. Rev. Stat. § 29-4011(3), any law enforcement agency with jurisdiction over the area where a registrant resides, has a temporary domicile or habitual living location, is employed, carries on a vocation, or attends school is responsible for the enforcement of and investigation into violations of the Sex Offender Registry Act.

40.    Defendants Greg Magee (Adams), Darrell Hamilton (Antelope), Bill Simpson (Arthur), K. Patrick Mooney (Banner), Tim Sierks (Blaine), David Spiegel (Boone), Tammy Mowry (Box Butte), David Derickson (Boyd), Steve Hapner (Brown), Neil A. Miller (Buffalo), Robert Pickell (Burt), Mark Hecker (Butler), William Brueggeman (Cass), Larry Koranda (Cedar), Timothy Sutherland (Chase), Melvin Christensen (Cherry), Darrell Johnson (Cheyenne), Jeff Franklin (Clay), Paul J. Kruse (Colfax), Bradley Boyum (Cuming), Ted Henderson (Custer), James L. Wagner (Dakota), Karl Dailey (Dawes), Gary Reiber (Dawson), Jeffrey S. Ortgies (Deuel), Dean Chase (Dixon), Steve Hespen (Dodge), Timothy F. Dunning (Douglas), Robert S. McBride (Dundy), William Burgess (Fillmore), Jerry L. Archer (Franklin), Daniel Rupp (Frontier), Kurt Kapperman (Furnas), Millard "Gus" Gustafson (Gage), Doug Miller (Garden), Larry D. Donner (Garfield), Dennis Ocken (Gosper), Shawn Hebbert (Grant), David C. Weeks (Greeley), Jerry Watson (Hall), Kirk W Handrup (Hamilton), Chris Becker (Harlan), Thomas Dow (Hayes), Bryan Leggott (Hitchcock), Ben Matchett (Holt), Lynn Nichols (Hooker), Harold Schenck (Howard), Nels Sorensen (Jefferson), James P Wenzl (Johnson), Scott K. White (Kearney), Kevin Mueller (Keith), Jeff Kirsch (Keya Paha), Harry J. Gillway (Kimball), James F. Janecek (Knox), Terry Wagner (Lancaster), Jerome Kramer (Lincoln), Patrick McNeil (Logan), Kirby Holloway (Loup), Vern Hjorth (Madison), John Haller (McPherson), Anthony McPhillips (Merrick), John Edens (Morrill), Davis Moore (Nance), Brent Lottman (Nemaha), James R Marr (Nuckolls), James Gress (Otoe), Jayme Reed (Pawnee), James D. Brueggeman (Perkins), Tom Nutt (Phelps), Rick Eberhardt (Pierce), John Zavadil (Platte), Dwaine W. Ladwig (Polk), Gene Mahon (Red

Willow), Vernon Buckminster (Richardson), Willis Haynes (Rock), Alan Moore (Saline), Jeff Davis (Sarpy), Kevin Stukenholtz (Saunders), Jim K. Lawson (Scotts Bluff), Joe Yocum (Seward), Terry Robbins (Sheridan), Michael F. Janulewicz (Sherman), William Roe (Sioux), Michael Unger (Stanton), David Lee (Thayer), Gary Eng (Thomas), Chris Kleinberg (Thurston), Casey D. Hurlburt (Valley), Michael Robinson (Washington), LeRoy W Janssen (Wayne), Troy Schmitz (Webster), Adrian Lindsey (Wheeler), Dale Radcliff (York), are the County Sheriffs of their respective counties in Nebraska (hereafter referred to as "Sheriffs").  Each Sheriff is sued in his or her official capacity.

41.   Defendants Thomas K. Casady (Lincoln), Alex Hayes (Omaha), Leonard Houloose (Papillion), Timothy S. Mullen (Fremont), Lester E. Johnson (Bennington), Ron Murtaugh (Ralston), William Gumm (Columbus), Donald Klug (York) are the Police Chiefs of their respective cities (hereafter referred to as "Police Chiefs").  Each Police Chief is sued in his or her official capacity.

## SUMMARY OF THE NEBRASKA SEX OFFENDER REGISTRATION LAW

*Broadened Applicability of the New Act - Neb. Rev. Stat. § 29-4003*

42.   Pursuant to Neb. Rev. Stat. § 29-4003(1)(a), the New Act applies to any individual who, on or after January 1, 1997:

   a.   Has ever pled guilty to, nolo contendere to, or been found guilty of any of the enumerated sexual and nonsexual offenses under Nebraska law;

   b.   Has ever pled guilty to, pled nolo contendere to, or been found guilty of any offense that is substantially equivalent to a registrable offense by any other jurisdiction;

   c.   Is incarcerated, in a public or private institution, or on probation or parole for pleading guilty to or being found guilty of a registrable offense prior to January 1, 1997; or

   d.   Enters the state and is required to register as a sex offender under the laws of another jurisdiction of the United States.

43.   In addition, Neb. Rev. Stat. § 29-4003(1)(b) states that the New Act applies to any

individual who, on or after January 1, 2010:

a. Has ever pled guilty to, pled nolo contendere to, or been found guilty of various degrees of murder, manslaughter, various degrees of assault, stalking, unlawful intrusion on a minor, kidnapping, false imprisonment, or attempt, solicitation, aiding or abetting, being an accessory, or conspiracy to commit any of these offenses, when a court finds evidence of sexual contact or penetration in the record;

b. Has ever pled guilty to, pled nolo contendere to, or been found guilty of various degrees of sexual abuse of an inmate or parolee, sexual abuse of a protected individual, incest, child abuse with a sexual component, enticement by electronic communication device, or attempt, solicitation, aiding or abetting, being an accessory, or conspiracy to commit an offense listed;

c. Has ever pled guilty to, pled nolo contendere to, or been found guilty in another jurisdiction of an offense that is substantially equivalent to those listed above; or

d. Enters the state and is required to register as a sex offender under the laws of another jurisdiction of the United States.

44. Prior to the modifications made by LB 97 and LB 285, the sentencing court had limited discretion to determine that the Act did not apply.  When the charged offense was kidnapping, false imprisonment of a minor, or debauching a minor, the sentencing court could examine mitigating circumstances and determine that, in light of all the facts, the offense was committed without a sexual element.  This was an effective means by which a sentencing court could ensure that the Act was applied only in appropriate cases.

45. The New Act eliminates this discretion.  Now, the sentencing court does not have the ability to review the facts of each case to determine that the offense committed does not justify application of the New Act.[2]

46. In addition, the New Act's inclusion and repeated use of the term "ever" is vague and susceptible to arbitrary enforcement.

---

2 For example, an individual convicted of false imprisonment under Neb. Rev. Stat. § 28-315, a misdemeanor that does not contain a sexual element, will be subject to the registration and public notification requirements.

### Registration and In-person Reporting - Neb. Rev. Stat. § 29-4004

47.     Neb. Rev. Stat. § 29-4004(2) requires a subject individual to inform the sheriff of the county in which he or she resides in person if he or she has a new address, temporary domicile, or habitual living location, within three working days before the change.[3]  This reporting must be done in-person, and the registrant must also complete a form prescribed by the State Patrol for such purpose.

48.     Neb. Rev. Stat. § 29-4004(3) requires a subject individual to inform the sheriff of the county in which he or she resides in person if he or she has a new address, temporary domicile, or habitual living location in a different county in this state within three working days before the address change, and to register with the county sheriff of his or her new residence within three working days after the address change. Neb. Rev. Stat. § 29-4004(4) provides for the substantially same procedure if an individual is moving out-of-state.  This reporting must be done in-person, and the registrant must also complete a form prescribed by the State Patrol for such purpose.

49.     The remaining subsections of Neb. Rev. Stat. § 29-4004 impose similar notification requirements on the subject person relating to education, employment, vocations, subsequent incarceration, and loss of address, temporary domicile, or habitual living location.  Again, the registrant must report in-person and he or she must also complete a form for that purpose.

50.     Because the definitions added by LB 97 and augmented by LB 285 are so vague and confusing, the New Act is virtually impossible to comply with as it relates to the registration requirements for individuals subject to the Act.

51.     "Temporary domicile" is defined as any place at which the person **actually lives or stays** for a period of **at least three working days.**  "Habitual living location" is defined as any

---

3 This subsection in the prior Act clearly applied to intra-county moves only, but that language was eliminated under the New Act.  Apparently, this subsection now merely restates the requirement to inform the sheriff of any move, even though that requirement is restated in other subsections as well, thereby reinforcing the vagueness of the New Act.

place that an offender **may stay for a period of more than three days** even though the sex offender maintains a separate permanent address or temporary domicile.

52.     First, the unclear definition of temporary domicile, coupled with the reporting requirement, renders the statute impossible to comply with.  The New Act requires a registrant to inform the sheriff in the county where he or she resides **before** the person actually lives or stays in another place for at least three working days.  Only a soothsayer could predict how long certain out-of-county trips will take, but the Act imposes such an affirmative obligation on each registrant.  In addition, the New Act fails to define "working days," leaving the entire reporting structure open to interpretation and arbitrary enforcement.

53.     Second, the unclear definition of habitual living location, coupled with the reporting requirement, renders the statute confusing and impossible to comply with.  A habitual living location includes anywhere a registrant **may stay** for a period of more than three days, which includes virtually any habitual location on the planet that would permit a registrant to stay.[4]  The definition is also confusing because a habitual living location is measured in only "days," not "working days" as used throughout the rest of the New Act.  Adding to the confusion is the fact that, although a habitual living location is measured only in days, the time period in which to report a new habitual living location to law enforcement is still measured in "working days."  Regardless, the entire reporting scheme remains unclear and confusing because, again, the Act fails to define "working days."

54.     In addition to being vague, confusing, and susceptible to arbitrary enforcement, the in-person reporting requirements impose a significant burden on travel within the state and without.

*Registration Duration - Neb. Rev. Stat. § 29-4005*

55.     Under the prior Act, the registration period was ten years following discharge from

---

4 Although this may seem like hyperbole, the New Act literally requires a registrant to inform law enforcement of virtually every address in the county, state, nation, and planet that would permit him or her to stay for three days.

13

probation, parole, supervised release, or from incarceration.  An individual who committed an aggravated offense, had a prior conviction for a registrable offense, was required to register for life in another jurisdiction, or who was determined to be a sexually violent predator was required to register for life.

56.   Some Does were subject to the ten-year registration requirement at the time they entered into their respective plea agreements.  When entering their pleas, they reasonably relied on the fact that they would be subject to the registry for a period of ten years.

57.   Under the New Act, Neb. Rev. Stat. § 29-4005 now states that the registration period is determined based solely on the possible punishment for the underlying conviction, to wit:

   a.   Fifteen years, if the registrable offense carried a maximum punishment of imprisonment of one year or less;

   b.   Twenty five years, if the registrable offense carried a maximum punishment of imprisonment of more than one year; and

   c.   Life, if the registrable offense carried a maximum punishment of imprisonment of more than one year, and the registrant was convicted of an aggravated offense or had a prior sex offense conviction or has been determined to be a lifetime registrant in another jurisdiction.

58.   This new term of registration materially modifies the law in effect at the time said Does entered into their plea agreements.

59.   The extension of the registration period under the New Act past ten years and the lengthy duration for which a registrant is subject to the New Act constitute an additional punishment for a single offense.


***Registrable Data and Law Enforcement Searches - Neb. Rev. Stat. § 29-4006***

60.   The New Act drastically expands the amount and type of information that law enforcement is required to obtain from a registrant.  In fact, the law expands the information to include data and information of family members, employers, and others that have not been convicted of a registrable offense.

61.   Neb. Rev. Stat. § 29-4006 states that registration information shall include, but not be limited to,[5] such general information as name, aliases, birthday, social security numbers, etc.  However, the information also includes:

a.   The address of each residence at which the person resides, has a temporary domicile, has a habitual living location, or **will reside**;[6]

b.   The name and address of any place where the person is an employee or student **or will be an employee or student**, including work locations without a single worksite;[7]

c.   The license plate number and a description of any **vehicle** owned **or operated** by the person, and its regular storage location[8];

d.   The person's motor vehicle operator's license number;

e.   The person's original travel and immigration documents, professional licenses or certificates, valid motor vehicle operator's license, or state identification card submitted for photocopying;

f.   The person's telephone numbers; and

g.   A physical description of the person, including current photograph.

62.   The New Act provides unprecedented and unlimited access inside a registrant's home and personal property.  The New Act requires the State Patrol to collect the following information:

a.   All remote communication device identifiers and addresses, including, but not limited to, all global unique identifiers, serial numbers, Internet protocol addresses, phone numbers, and account numbers specific to the device; and

b.   All email addresses, instant messaging identifiers, chat room identifiers, global

---

5 This clause permits virtually an unlimited amount of information to be collected by the State Patrol, regardless of the type or subject, thereby again rendering the New Act subject to arbitrary and capricious enforcement at the hands of law enforcement.
6 The vague definitions of "temporary domicile" and "habitual living location" again render compliance with this subsection impossible.
7 The New Act again imposes an affirmative obligation to report information that a registrant will simply not know, such as future residences, future employment, and future education.
8 The term "vehicle" is not defined, but presumably means all motor operated equipment such as cars, boats, RV's, four-wheelers, snowmobiles, tractors, etc.  The requirement that all "vehicles" that the registrant "operates" includes vehicles owned by someone other than the registrant.

unique identifiers, and other Internet communication identifiers that the person uses or plans to use, all domain names registered by the registrant, and all blogs and Internet sites maintained by the person or to which the person has uploaded any content or posted any messages or information.

63.  While Neb. Rev. Stat. § 29-4001.01 provides some definitions, it fails to defined key terms such as "remote communication device,"[9] "identifiers and addresses," "global unique identifiers," and "other Internet communication identifiers" thereby adding to the vagueness of the New Act and how it will be enforced.

64.  A registrant must provide law enforcement with email addresses, instant messaging identifiers, chat room identifiers, global unique identifiers, and other Internet communication identifiers that the person **uses or plans to use.**  The Act also imposes an affirmative obligation to provide law enforcement with a list of all blogs and Internet sites maintained by the person **or to which the person has uploaded any content or posted any messages or information.**  Not only is this burdensome on the registrants, but it creates a prohibition on their right to engage in first amendment activity free from government monitoring since it requires them to provide a list of all blogs and internet sites to which the registrant posts any messages, content, or information.[10]

65.  Neb. Rev. Stat. § 29-4006(13) imposes an affirmative obligation to provide law enforcement with any changes to this list of blogs and Internet sites by the following "working day."

66.  But the New Act goes far beyond merely collecting this information from a registrant. When the registrant provides law enforcement with this information, the New Act cryptically mandates that the registrant sign a consent form giving law enforcement the ability to search all computers or other electronic communication devices possessed by

---

9 Although not defined, presumably this might mean all computers, cell phones, personal data assistants, gaming systems with communication capability (such as Gameboys), bullhorns, walkie talkies, tin cans connected via string, etc.
10 This includes job search sites, ebay, postboards, Amazon, requesting email updates from WhiteHouse.gov, completing the Nebraska Attorney General's Consumer Complaint satisfaction survey, etc.  Basically, nearly every website requires cookies when accessing, and nearly all commonly-used sites fall within this category.

the person.

67. This consent form also gives law enforcement the ability to install hardware or software to monitor the person's Internet usage on all computers or electronic communication devices possessed by the person.

68. Requiring that registrants give their consent to search the computers or electronic communication devices possessed by the person, under pain of criminal prosecution pursuant to Neb. Rev. Stat. § 29-4001, amounts to invalid, coerced consent.

69. The New Act also infringes on the privacy of the registrant's family, roommates, employers, etc.  By coercing a registrant to give "consent" to search all computers or electronic communication devices **"possessed" by the registrant**, the New Act includes those devices over which the registrant asserts possession or constructive possession regardless of actual ownership.  Without limitation, this necessarily includes electronic communication devices and computers of the family, roommates, employer, coworkers, friends, etc.

70. Not only are computers and electronic communication devices subject to search, the New Act also gives law enforcement the apparent **ability to install hardware or software on all computers and electronic communication devices to monitor Internet usage.**  This constitutes an ongoing search and seizure by law enforcement of property possessed by the registrant.[11]

71. With law enforcement constantly looking over a registrant's shoulder, including peering into the devices of his or her family, employer, etc., the New Act constitutes an unreasonable search and seizure, without probable cause, warrant, or valid consent, which deters and chills free speech in derogation of the United States and Nebraska Constitutions.

---

11 Because a registrant must give consent to monitor the electronic communication devices within his or her possession, law enforcement presumably has the authority to prohibit the registrant from possessing those electronic communication devices not susceptible to monitoring, such as nearly all cell phones. Again, the New Act is unclear and open to arbitrary and capricious enforcement.

### *Frequency of Information Verification - Neb. Rev. Stat. § 29-4006(4)-(6)*

72.     Registrants are required to report periodically to verify the information on the registry as correct and current.  This verification must be done in person at the sheriff's office in the county in which he or she resides, has a temporary domicile, or is habitually living.

73.     A fifteen year registrant shall report once per year in their birth month.

74.     A twenty-five year registrant shall report every six months: the birth month and in the sixth month following the month of his or her birth.

75.     A lifetime registrant shall report every three months to the office of the sheriff of the county in which he or she resides: in their birth month and every three months following the month of his or her birth.

76.     If the person required to register under the act fails to report in person, the person shall be in violation of the Act, again under pain of criminal prosecution.

77.     Although in-person verification occurs per the above schedule, any changes in a registrant's email addresses, instant messaging identifiers, chat room identifiers, global unique identifiers, and other Internet communication identifiers that the registrant uses or plans to use, all domain names registered by the person, and all blogs and Internet web sites maintained by the person or to which the person has uploaded any content or posted any messages or information, must be provided to law enforcement by the next working day.

### *Criminalization of Certain Communication - Neb. Rev. Stat. § 28-322.05*

78.     The New Act criminalizes some speech for some registrants, thereby constituting an unconstitutional prior restraint on speech.

79.     Neb. Rev. Stat. § 28-322.05 only applies to registrants convicted of one of the enumerated offenses committed against minors, including kidnapping, sexual assault, incest, pandering, visual depiction of sexually explicit conduct of a child, possessing any visual depiction of sexually explicit conduct, criminal child enticement, child enticement by means of an electronic communication device, enticement by electronic

18

communication device, or attempt or conspiracy to commit any of these offenses.

80.     A registrant convicted of one or more of these offenses, or an equivalent offense committed in another jurisdiction, commits the crime of Unlawful use of the internet by a prohibited sex offender when he or she knowingly and intentionally uses a social networking web site, instant messaging, or chat room service that allows a person who is less than eighteen years of age to access or use its social networking web site, instant messaging, or chat room service.

81.     This section is vague, ambiguous, and constitutes an unconstitutional restraint on speech and free association.

82.     First, the terms "social networking web site," "instant messaging," or "chat room service" are not defined,[12] rendering the statute open to interpretation and susceptible to capricious enforcement.

83.     Next, even if a definition for these terms could be imputed into the statute, the list of prohibited internet sites is so vast that the New Act virtually renders the internet unusable by a registrant subject to this additional punishment.[13]

84.     This prohibition against speech applies regardless of whether use of a social networking web site, instant messaging, or chat room was an element of the underlying offense or whether it was an instrumentality used during commission of the registrant's underlying act.

85.     Unlawful use of the internet by a prohibited sex offender is a misdemeanor for a first offense, and a felony for any subsequent offense.[14]  This constitutes a prior restraint on

---

12 The terms "social networking web site," "instant messaging," and "chat room" are defined in the Nebraska Sex Offender Registration Act, which is found in Chapter 29 (Criminal Procedure) of the Nebraska Revised Statutes.  However, the crime of Unlawful use of the internet by a prohibited sex offender is found in Chapter 28 (Crimes and Punishment) of the Nebraska Revised Statutes.  Adding to the confusion is the fact that the term "social networking web site," while defined in the New Act, is not used anywhere in the Act itself and is only found in Chapter 28 as an element of Unlawful use of the internet by a prohibited sex offender.  Obviously, the Legislature considered the New Act and the new crime as *in pari materia* when drafting, clearly showing a punitive intent on the part of the Legislature.
13 For example, a registrant subject to this additional punishment would be prohibited from using ebay, educational tools such as Blackboard, YouTube, Amazon, Yahoo, ESPN.com, CNN.com, etc.
14 For example, a registrant would commit a misdemeanor by bidding on an item listed on ebay, and possibly be guilty of a felony when she later checked to determine if she submitted the winning bid.

speech in derogation of the United States and Nebraska Constitutions.

*Public Dissemination of Information - Neb. Rev. Stat. §§ 29-4009 and 4013*

86.     Prior to enactment of LB's 97 and 285, all registration information gathered by law enforcement was presumed to be confidential unless specifically exempted.  Not all registrants were subject to community notification via the State Patrol website.  Instead, the prior Act required the State Patrol to examine the individual registrant's conditions of release, physical conditions such as age or illness, criminal history, and other factors to determine the risk of recidivism and commensurate level of public notification.

87.     This examination resulted in a three-tiered approach to public notification.  If an individual was a low risk to reoffend (Level I), only law enforcement agencies were provided with the person's registry information.  If the risk was moderate (Level II), law enforcement, schools, day cares, health care facilities for children and vulnerable adults, and religious and youth organizations were notified.  Only if the risk of recidivism was determined to be high (Level III) was the individual subject to community-wide notification via the State Patrol website.

88.     The tiered system allows for information to be disseminated to those groups with a real interest in being alerted to low and moderate risk individuals, while still providing for public notification when an individual poses a high risk to the community at-large.

89.     A registrant is only subject to public notification and scrutiny upon an individualized determination that he or she posed a high risk to recidivate, and such determination is reviewable through the Nebraska Administrative Procedures Act.  Tiered system aside, Neb. Rev. Stat. § 29-4013(3) permits law enforcement to notify the public when an individual posed a danger under circumstances not provided for by the Act.

90.     The tiered system prevents dilution of registrant information through "sex offender overload" so that the public is notified of only those individuals that pose the most serious risks.  The New Act is a material deviation from this approach, resulting in a dilution of information that provides little to no real useful or actionable information to

the public.

91.    Neb. Rev. Stat. § 29-4009(1) now presumes all information gathered for the registry is **not** confidential, with limited exception.  This section, along with Neb. Rev. Stat. § 29-4013(b), requires community notification for all individuals subject to the registry, not just those individuals determined to be a high risk to reoffend.  This includes those registrants previously determined to be low-risk.

92.    Under the New Act, all individuals subject to registration will also be subject to public notification via the State Patrol's sex offender website, regardless of the circumstances of the offense, mitigating factors, or the individual's risk of recidivism.

93.    The New Act authorizes the State Patrol to share public notification information with a number of organizations, including social service entities that protect children, volunteer organizations, public and private agencies conducting employment background checks, public housing agencies, and health care providers conducting background checks.  There is no limit on or regulation over the dissemination of information under this provision.

94.    The New Act also eliminates a hearing before the State Patrol by which an individual can provide evidence as to his risk of recidivism.  Previously, Neb. Rev. Stat. § 29-4013 prescribed such a procedure and the factors the Patrol must consider.

95.    The New Act requires the State Patrol to adopt agency rules and regulations to implement the release of registry information.  To date, no agency rule has been promulgated stating if there will be a procedure to challenge one's status as a registrant, although letters from the State Patrol have been sent notifying registrants of their new obligations under the Act.

96.    The elimination of a meaningful opportunity to present evidence before a neutral decision maker as to the necessity of community-wide, and practically speaking international, notification constitutes a violation of due process.

## <u>IMPACT OF THE NEW ACT ON THE PLAINTIFFS</u>

97.    John Doe 1 resides in Douglas County, Nebraska.  Doe 1 was convicted in 1996 in Lancaster County District Court for sexual assault of a child.  He was 19 years old at the time, and had a consensual relationship with his fifteen year old girlfriend.  He was sentenced to three years of probation, and ordered to pay restitution.  Doe 1 completed all his probation requirements and was discharged from probation in September, 1999. Upon completing probation in 1999, Doe 1 was classified as a Level III registrant subject to public notification.  Due to the public notification, Doe 1 and his family were subject to public retribution as vandals on one occasion threw a chunk of concrete through a window of the family home.  Someone also handed out fliers with his information to local businesses and schools.  In 2003, Doe 1 successfully challenged his classification and was re-classified to Level II, thus removing him from community notification.  He was taken off the registry in September 2009, and has had no obligation to register since. He has worked for a car dealer in the area since 2004, but his employer does not know of his conviction.  Pursuant to his duties at the dealership, he operates, details and prepares vehicles for customers.  He has no idea how he will possibly stay complaint with the New Act as most of the cars he operates have not received a license plate since they have not yet been purchased, and the storage location for each vehicle changes when purchased or sent to another dealer for reasons not within his control.  Doe 1 uses his internet enabled home computer and cell phone extensively to pursue his hobby and interest in classic cars and to communicate with family members via the Internet.  Under the New Act, he will be prohibited from using the sites he uses to stay in touch.  His cell phone is capable of accessing the internet.   Under the New Act he has reason to believe he will have to get rid of his phone or allow the State Patrol to install monitoring software on it.  He has family that lives out of state and would be required to notify the State Patrol each time he visited them for more than three days.   Although he has not had any registration requirements for a period of time, the New Act will not only put him back on the registry, but will place his name on the State Patrol website for approximately the next fifteen

years.  He will also be forced to report in person to the sheriff every six months during that time.  All of these requirements plus his past experience cause him great anxiety and worry for both his personal safety and future employment.  If he would have known that the State would later change the terms of his requirements under the registry he would not have entered into his original plea agreement.

98.    John Doe 2 resides in Douglas County, Nebraska with his wife and children.  Pursuant to plea agreements Doe 2 has twice been convicted of possession of child pornography.  He was not sentenced to any jail time and has successfully completed his probation.  In 2008 he requested a review of his Level II status, and has been informed that because of the New Act, his case is still pending.  Under the New Act he will be a lifetime registrant. Through his employment as a network administrator, he uses many types of electronic communication devices and computers.  He uses email and web based peer to peer communication software extensively at work.  Even if Doe 2's employer does not fire him when they find out he is a registered sex offender, he fears he cannot possibly stay compliant with all of the notification requirements given his constant and extensive use of electronic communication devices.  He has been married to his wife for twenty years, and has children who are in high school.  He and his wife previously lost their jobs because of the convictions, and he is scared that further community notification will impair his current and future employability.

99.    John Doe 3 is a resident of Douglas County, Nebraska.  In 2004, he pled guilty to conspiracy to commit sexual assault and is currently a Level I registrant.  At the time, he lost his job in the mortgage industry, and now is forced to work from home.  He is greatly reliant on the internet for work, but may be prevented from continuing his occupation because of the new crime "Use of the Internet by a Prohibited Sex Offender".  He is married and has two children that live with him, and he is worried about his wife's continued ability to keep her job and the impact the new law will have on his children. Doe 3 owns a cell phone and computer at his home.  Had he known the law at the time he entered into his plea agreement would be retroactively changed, he would not have

entered into it.

100.  John Doe 4 is a resident of Douglas County, Nebraska.  Doe 4 entered into a plea agreement and was convicted of first degree sexual assault of a child in April, 2002.  He was sentenced to 180 days incarceration and was required to register as a sex offender. Since his release from incarceration Doe 4 has been and remains a Level II registrant and is subject to the registry for a period of 10 years.  He is a handyman and worried that people will not hire him if he is subject to public notification.  He lives in a home with his wife and two roommates who all have access to and use a computer.  Doe 4 will be a 25 year registrant under the New Act.

101.  John Doe 5 is a resident of Stanton County, Nebraska.  In 2000, he pled guilty to first degree sexual assault, and is currently a Level III registrant.  He has joint custody of his two children from a previous marriage.  He owns a cell phone that is internet capable. Under the New Act he has reason to believe he will have to get rid of his phone or allow the State Patrol to install monitoring software on it.  He currently lives with his mother, and she has a computer in the home that he does not use.  Regardless, this computer is within his "possession" and will be subject to search and constant monitoring by the State Patrol.  He works with computers at his job, and is terrified that his employer will fire him because of law enforcements ability to search, seize and monitor.  He is confused about the reporting implications of the New Act, and is unsure how or if he is able to take a family cruise.

102.  John Doe 6 is a resident of Sarpy County, Nebraska.  He pled guilty to sexual assault of a child in 2000, and is currently a Level III registered sex offender.  He and those around him will be severely impacted by the new law.  At the time of his plea, he understood he would be on the registry for ten years. He would not have pled if he had known he would now be on the State Patrol website until 2025.  He currently lives with his mother, step-father and brother, all of whom have access to two computers in the home.  All the information that is on their computers, cell phones, and other electronic devices will be "possessed" by Doe 6 and therefore subject to seizure by law enforcement and

24

continuous search.  He owns and operates a home marketing business online, the additional years of community notification and reporting requirements will severely hamper his ability to grow his business until 2025.

103.   John Doe 7 is a resident of Dodge County, Nebraska.  Pursuant to a plea agreement he pled guilty to attempted second degree sexual assault of a child in 2005, and is currently a Level I registered sex offender.  Doe 7 has been married since 2002, and presently lives with wife and step-daughter.  They maintain a family computer in their home.  He is worried that if he is placed on the State Patrol website, he will lose his current job.  Under the current act he is a 10 year resident.  Under the New Act Doe 7, a registrant who received no jail sentence and has at all times been classified as a Level I registrant, will be a lifetime registrant.  Had he known the future registration consequences of his plea, he would not have entered into it.

104.   John Doe 8 is a resident of York County, Nebraska.  In 1989, he was convicted in California of a lewd and lascivious act with a child and is currently a Level III registrant.  He subsequently moved to Nebraska in 2005 and currently lives with his wife in their marital home.  He maintains a computer in their home, but it does not have internet access.  He does not own a house phone, and relies exclusively on his cell phone for communication.  Under the New Act he has reason to believe he will have to get rid of his phone or allow the State Patrol to install monitoring software on it.  He intends to visit friends and family in California, Ohio, Kansas, Virginia, and Colorado, but he is confused by the rigorous notification process and what notification he must provide before traveling.

105.   John Doe 9 is a resident of Douglas County, Nebraska.  In 2005 Doe 9 entered into a plea agreement and was convicted in Pottawattamie County, Kansas of aggravated sexual battery.  At the time of the offense Doe 9 was 24 years old while the victim was 20 years old.  He was discharged from probation in May, 2009.  He is currently a Level I registrant.  He works for an electric utility company and is required to report to various counties for work.  He also uses computers as part of his employment.  He lives with two

roommates, and they collectively have access to numerous electronic devices capable of internet connection.  Under the New Act Doe 9 is uncertain if he is required to report the devices he has access to but are actually owned by his roommates.  He uses email to stay in touch with friends and family, which will now be subject to search by law enforcement.  His family owns a farm on which he regularly works during the busy seasons.  He will now be required to register in the county where the farm is located if he intends to assist them for a period exceeding three days time.  Although he was determined by the State to be a low risk, he will now be subject to community notification for 25 years.  Had he known the State would later change the requirements of his plea agreement, he would not have entered into it.

106.   Jane Doe 10 is a resident of Lancaster County, Nebraska.  She entered into a plea agreement and was convicted of third degree sexual assault in 2004.  Doe 10 is currently a Level I registered sex offender.  Doe 10 works primarily as a paralegal for a tax attorney in Lancaster County, Nebraska.  In her work Doe 10 is required to use internet enabled computers throughout any given work day and has access to numerous forms of confidential information.  She is worried she will lose her job if law enforcement is allowed to search and monitor her employer's computer and gain access to attorney-client information.  Doe 10 owns a cellular telephone.  Under the New Act she will be a 15 year registrant.  She would not have entered into her plea agreement if she had known that she would be subject to community notification under the new act.

107.   John Doe 11 is a resident of Saunders County, Nebraska.  He entered into a plea agreement and was convicted of attempted first degree sexual assault in 2000.  He is currently a Level I registrant.  He was married in 2005 and has three school-age sons.  He coaches several sports teams in school and community leagues.   Doe 11 works as a mechanic traveling to distribution centers to perform maintenance and repairs on industrial equipment.  This work takes Doe 11 to several counties throughout the State of Nebraska.  To complete the duties of his job Doe 11 relies heavily on an internet enabled company computer, a cell phone and a company vehicle.  Doe 11 communicates with

other employees and clients via interactive websites.  He worries that once his employer learns that the work computers will be subject to search and seizure, he will lose his job. In his home Doe 11 has a computer that is used by all members of the family.  Doe 11 also has a cellular telephone that he uses for personal and business purposes.  He was scheduled to be off the registry in 2012, but under the New Act will now be subject to the registration requirements and community notification until 2017.  Had he known the State would later change the requirements of his plea agreement, he would not have entered into it.

108.   John Doe 12 is a resident of Douglas County, Nebraska.  He entered into plea agreements and was found guilty to possession of child pornography in 2001 and 2004.  He is currently a Level II registrant not subject to community notification.  He is married and has children from a previous marriage and a step-daughter of his current marriage.  Doe 12 owns an information technology company and has numerous computers and electronic communication devices within his possession, almost all used exclusively for his business.  He is a public figure in his industry, and has published articles and does speaking engagements worldwide.  It will be impossible for him to continue his business under the New Act.  First, he will be subject to the new crime of Unlawful Use of the Internet by a Sex Offender.  This restriction will effectively prevent him from operating his information technology company.  Second, all of the computers, cell phones, and other electronic communication devices in his possession will be subject to search, seizure and constant monitoring.  Third, he is terrified that the public notification alone will ruin his company.  Under the New Act he will be listed on the State Patrol website for life.  Had he known the State would later change the requirements of his plea agreement, he would not have entered into it.

109.   John Doe 13 is a resident of Polk County, Nebraska.  In 2005, he entered into a plea agreement and was convicted of two counts of sexual assault of a child.  He currently a Level II registered sex offender.  Doe 13 is a farmer who lives with his wife on the family farm and works in multiple counties.  Doe 13 owns a computer as well as a cellular

telephone.  He has taken part in both group and individual counseling and is considered by his counselor to be at a low risk to re-offend.  Under the New Act he will be a lifetime registrant.  He would not have entered into the plea agreement had he known about the added registration requirements.

110.  John Doe 14 is a resident of Douglas County, Nebraska.  He entered into a plea agreement and was convicted in 1994 of sexual assault of a child.  He is currently a Level II registered sex offender.  He lives with his fiancé.  He owns a cell phone with internet capabilities.  Under the New Act he has reason to believe it will be subject to search and seizure by law enforcement as well as ongoing monitoring.  As part of his job duties as a manager for a telemarketing group he is required to use a computer and the internet throughout the day.  He is scared that his job is in jeopardy because his work computer will now be subject to constant search and seizure.   He also engages in political discussion in online forums, and will be prevented from accessing those websites under the new act. He would not have entered into the plea agreement had he known about the added registration requirements.

111.  John Doe 15 is a resident of Platte County, Nebraska.  He pled guilty to first degree sexual assault in 1998, and is currently a Level III registrant.  At the time of the offense Doe 15 was 23 years of age and the victim was 15 years of age.  Subsequent to his conviction Doe 15 and the victim were married.  Today, he lives with his girlfriend in Saunders County.  He owns a cell phone with internet capability.  He would not have entered into the plea agreement had he known about the added registration requirements.  He will be obligated to register in multiple counties because he lives in Platte County, works in various counties across Nebraska as a welder, has family in Gage County, and owns property in other counties in the State.  He is worried that his employer will no longer use him for new projects because his workplace may be subject to search by law enforcement.  Furthermore, for this same reason he worries that it will be impossible to obtain future employment.  Doe 15 would not have entered into his plea agreement had he known the State would later change his requirements.

112.   John Doe 16 is a resident of Douglas County, Nebraska.  He was convicted at trial of first degree sexual assault in 2006 and is currently a Level II registrant.  Doe 16 lives with his wife and two step-children in the home he owns with his wife.  All members of the family have access to electronic communication devices in the home.  Doe 16 is unsure as to what extent law enforcement will be able to search his home and electronic communication devices owned or used by his wife and step-children.  He is currently employed as a telemarketer where he is required to use computers and other electronic communication devices extensively.  Doe 16 is concerned that the New Act will allow law enforcement to search his place of work.  He fears such constant interruptions will render him unemployable.  He and his wife own two vehicles and have equal access to both.  Under the New Act Doe 16 will be a lifetime registrant.

113.   John Doe 17 is a resident of Lancaster County, Nebraska.  He entered into a plea agreement which covered charges from two California counties in 2004.  Under the agreement he plead guilty to lewd and lascivious acts with a child, attempted sexual assault of a child and possession of child pornography.  Doe 17 is currently a Level II registrant subject to lifetime registration.  He resides with his parents who maintain numerous electronic communication devices and computers in the residence.  He works for his father's computer hardware, conferencing, and consulting business.  Restrictions relating to his "possession" of computers and electronic communication devices, and the constant search, seizure and monitoring by law enforcement are real barriers to employment.  During a brief period of time while he was erroneously listed on the State Patrol website, he received disquieting mail and became ostracized in his community.  He is terrified what further public notification will bring.

114.   John Doe 18 is a resident of Douglas County, Nebraska.  In 2001 he pled guilty and was convicted of third degree sexual assault of a child.  Doe 18 is currently a Level II registrant subject to the registry for 10 years.  Doe 18 lives with his wife in their marital home.  In the home they have a computer and cell phones that will be subject to the New Act's search and monitoring provisions.  He and his wife own four vehicles that they both

operate, all of which will be subject to registration. Doe 18 is currently self employed performing computer consulting and home repairs for clients. For his business, he regularly uses interactive websites that allow him to create a profile and communicate with other users. He will be prevented from continuing in this occupation because of the new criminal sanction. Doe 18 and his wife are concerned about the public retribution they may be subject to if he is subjected to public notification under the New Act.

115.     John Doe 19 is a resident of Nebraska. In 2001 he entered into a plea agreement and was convicted of sexual assault of a child and sexual assault of a child without consent. He is currently a Level II registrant subject to registration for 10 years. Doe 19 primarily works driving a freight truck and travels interstate on a frequent basis. Since he travels continually Doe 19 stays overnight with friends or sleeps in his truck. He leases office space in Lancaster County to operate his music promotion and audio production company. Because of its complex requirements, Doe 19 fears that he will not be able to comply with the New Act as it requires registration notification in every county where he has a temporary domicile, habitual living location and carries on a vocation for 14 days in a row or an aggregate of 30 days in a year. Since Doe 19's vocation is truck driving, he fears he will need to register in every county where he regularly drives. Additionally, Doe 19's music promotion duties necessarily cause him to utilize internet websites and communicate with others via the internet. He regularly uses websites such as ebay to purchase audio equipment and musical instruments. He will not be permitted to use this website under the New Act. Under the New Act Doe 19 will be subject to public notification and will be a 25 year registrant. Doe 19 would not have entered into his plea agreement had he known the State would later change his requirements.

116.     John Doe 20 is a resident of Douglas County, Nebraska. In 1994 he entered into a plea agreement and was convicted of second degree kidnapping in Polk County, Iowa. He moved to Nebraska and was required to register as a Level III. Doe 20's classification is currently on appeal; Thus he has never been subject to public notification. Doe 20 lives with his wife and child in their marital home. He and his wife own and operate two

vehicles.  They have cellular telephones and an internet enabled computer in their home.
Doe 20 fears that under the New Act he will no longer be able to own a cellular
telephone; and that he will be subject to un-restricted search by law enforcement.  Doe 20
will be a lifetime registrant under the New Act.  At the time he entered into his plea
agreement sex offender registries did not exist in Iowa or Nebraska.

117.   Jane Doe A is a resident of York County, Nebraska.  She is married to John Doe 9 and
resides with him in their marital home.  Although she has not been convicted of any
crime, under the New Act she is subject to the same degree of search and seizure as her
husband.  She owns a cell phone that has internet access.  Since she lives in the same
home as her husband it will be within his possession.  Under the New Act she has reason
to believe it will be subject to search and seizure by law enforcement as well as ongoing
monitoring.  She derives great pleasure from travelling and visiting friends with her
husband, but she is worried that she will not be able to because of the new in-person
reporting requirements.  She and her husband share the same vehicle.  She does not
understand why her computer use and cell phone is subject to scrutiny from law
enforcement.

118.   Jane Doe B is a resident of Douglas County, Nebraska.  She is married to John Doe 16
and resides with him in their marital home, where they collectively use electronic devices
capable of Internet communications, including a computer and cell phones.  She and Doe
16 have equal access to the family vehicle.

119.   John Doe C is a resident of Lancaster County, Nebraska.  He is an attorney who employs
Jane Doe 10, and maintains attorney-client privileged and other sensitive information
regarding cases on work computers that he owns.  He has serious concerns about
maintaining Jane Doe 10 as an employee in light of the continuous law enforcement
presence in his business.  His concern is even more acute because Doe 10 is the
"architect" of his network system and potentially "possesses" all the data for his practice.
He is concerned that his ethical obligation for confidentiality conflicts with Doe 10's
consent to constant search and monitor, and that the only solution is to terminate her

employment.   He is also concerned that if Doe 10 remains an employee and law enforcement installs monitoring software, he will never be sure that the software is removed.   He feels caught between terminating an integral employee on who he relies heavily on and risking disclosure of client information due to the monitoring software, which could result in an ethical violation and potential loss of his license to practice law.

120.    Jane Doe D is a resident of Stanton County, Nebraska.   She is the mother of John Doe 5, and resides with him in her residence.   She owns a computer that is connected to the internet.   Despite the fact that Doe 5 does not use the computer at all, it will still be subject to search and seizure by law enforcement, as well as monitoring software.

121.    John Doe E is a resident of Nebraska.   He owns a consulting company, and employs Doe 12 for the in-house database used by his company and its website which gives Doe 12 access to numerous computers including the corporate servers.   He is shocked that Doe 12 will now have these added restrictions because while on federal supervised release, there was no such search or monitoring of his computer system.   He even discussed the terms of Doe 12's supervised release with his monitoring officer, but the terms of the New Act are more intrusive than supervised release.   He is unwilling to let law enforcement search company computers and other electronic communication devices regularly, or to install monitoring software on them.   Given the added intrusion into the operations of his business and the possible negative reputation for his company, he feels that the only alternative is to terminate Doe 12.   This will materially impact the company in sunk costs of $60,000 -$70,000 and loss of future income of between $500,000.00 and $1,000,000.00.   However, he feels that the pecuniary loss is better than the alternative under the New Act and would refuse to hire anyone subject to its requirements.

122.    John Doe F is a resident of Lancaster County, Nebraska.   He owns a computer company that supplies computer conferencing hardware and software, consulting, online training, and customer support.   The use of computers, web-enabled cell phones, electronic communication devices, email, instant messaging, chat rooms, and other internet communication tools are integral to his operation.   His son, Doe 17, is an employee, and

he hoped that his son would play a larger role in the company after his parole ended as part of his succession plan. However, the New Act is a more restrictive form of parole and will prevent this from happening. His business requires periodic interstate travel at the last minute, which Doe 17 will not have the ability to do. He is of the opinion that the confidentiality concerns alone will prevent him from keeping his son as an employee or hiring others subject to the New Act. In addition, Doe 17 lives in the family home. Doe F maintains a separate home office at the family home and relies heavily on his home computer and cell phone to connect to the internet and conduct business from home. His wife also runs a business from home consulting pharmaceutical clients, which involves sensitive information. Doe F is concerned that law enforcement will now have access to all of his and his wife's business computers whether at work or home, including client and employee information and trade secrets. Doe F is faced with this dilemma: either banish his son from his residence and business or have that business and residence open to law enforcement search and seizure. This is unacceptable to him personally and professionally.

123. Jane Doe G is a resident of Douglas County, Nebraska. She is married to and is a business partner with Doe 12. She plans on residing with Doe 12 and their children once he is released from supervised release in January, 2010. While her husband does not currently stay in the home they own together overnight, he is in the home daily as that is where they conduct their business. She and her children own computers, cell phones, and other internet capable devices. They collectively maintain a family cell phone plan. Since her husband has virtually free access to these devices and therefore "possesses" them, she is upset that she and her children will be subject to constant search and seizure and internet monitoring. She is perplexed that although her husband is not subject to community notification because he is not a high risk threat, their home will now be listed along with those determined to be high risk. She has heard about instances of vigilantism and is scared for her and her family's safety.

124. Jane Doe H is a resident of Douglas County, Nebraska. She is Doe 12's minor daughter.

33

Doe 12 pays for her cell phone so they can stay in contact, but now that phone will be subject to constant monitoring by law enforcement. Doe H regularly visits Doe 12 at the home he owns with Doe G, but because of the restrictions on Doe 12's internet usage, she worries she will not be able to use Facebook, message her friends, use YouTube, or access online games. Doe H's claim is brought by Doe 12 on her behalf.

125. Jane Doe I is a resident of Douglas County, Nebraska and the daughter of Doe G. She owns a cell phone and computer that Doe 12 has access to and therefore "possesses," for at least some amount of time. She is concerned that this will subject her devices to search and seizure and monitoring by law enforcement. Currently, she maintains a password-protected computer so the probation officer does not have to search it, but the New Act opens up her devices to more intrusive and ongoing searches. She is afraid that her mother and stepfather will decide he should not move in because of the scrutiny and public scorn that will follow him as an individual listed as a sex offender on the public notification website. Doe I's claim is brought by Doe G on her behalf.

126. John Doe J is a resident of Douglas County, Nebraska. He is Doe 12's son, and he resides in the residence owned by Doe 12 and Doe G. He is worried that his name is soon going to be associated with a sex offender's, even though his father was determined not to be a high risk to reoffend. He drives a vehicle that is owned by his stepmother, but that Doe 12 operates occasionally. Therefore, a description of Doe J's vehicle, license plate, and location where it is normally kept will be listed on the registry. Even though he has done nothing wrong, he is terrified that when law enforcement sees him driving a registered vehicle, he will be stopped, especially if he is driving with his youthful friends. He owns a computer, iPod touch, and cell phone that he naturally keeps at the house with Doe 12. Because Doe 12 has even momentary "possession" of these items on occasion, he is concerned that they will be subject to search and seizure and monitoring by the State Patrol. He is frustrated that he waited a long time to live with his father, and now he is faced with the dilemma of either permitting law enforcement to monitor his electronic devices or moving out of his father's house.

34

127.   John Doe K is a resident of Nebraska.  He is Doe 12's minor son, and he visits the home
       owned by Doe 12 and Doe G regularly.  Doe K owns a cell phone, and his father
       occasionally has "possession" of this phone while Doe K is visiting.  He is concerned that
       the New Act subjects Doe K's cell phone to search and seizure and constant monitoring
       by law enforcement.  He is scared that he and his family will be targeted by vigilantes,
       even though his father was determined not to be a high risk to reoffend.  Doe K's claim is
       brought by Doe 12 on his behalf.

128.   For all the Does, they will forever be affected by public notification via the State Patrol's
       website.  Once a registrant is listed, even accidentally or briefly, that person will forever
       be memorialized as a sex offender through websites such as familywatchdog.us and
       neighborhoodscan.com.

129.   All registrants have expressed their concern that the registration information enumerated
       in Neb. Rev. Stat. § 29-4006 is nonexclusive, and that the State Patrol has the ability to
       expand the list of information they will have to provide.  The Does are concerned that
       this unbridled discretion on the part of law enforcement will further impact their lives, in
       addition to the impact the law will have on employers, family members, roommates, etc.

130.   All registrants have the added obligation to "timely update law enforcement of any of the
       information required to be provided by the act." Neb. Rev. Stat. § 29-4008.

131.   This means that registrants will have to constantly monitor the cell phone, computer, and
       other electronic communication devices owned by those around them that a registrant
       "possesses," and then provide a timely[15] update to law enforcement when those devices
       change.[16]

---

15 "Timely" is not defined in the New Act.
16 This is in addition to the obligation under Neb. Rev. Stat. § 29-4006(13) to inform law enforcement of
any changes in the registrant's email, instant message, chat room, or global unique identifier, and the
domain names, blogs and websites which the registrant maintains or to which the registrant uploads any
message or information within one working day.

## FIRST CAUSE OF ACTION - *EX POST FACTO*

## VIOLATION OF U.S. Constitution Article I § 10 UNDER 42 U.S.C § 1983

132.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

133.   Pursuant to 42 U.S.C. § 1983, this claim is brought by Plaintiffs Doe 1 through 20 against all Defendants.

134.   The events related to said Plaintiffs occurred before the enactment of the New Act.

135.   The Nebraska Legislature intended the New Act to be punitive, based on its statutory construction, structure and design, and on statements made by the Legislature.

136.   Even if the Legislature did not intend the New Act to be punitive, its purpose or effect is so punitive as to negate the Legislature's intent.

137.   The New Act disadvantages said Plaintiffs, because it creates or enhances penalties that did not exist when said Plaintiffs' offenses were committed.

138.   The New Act creates and imposes retroactive criminal punishment for past acts, and consequently is an *ex post facto* law in derogation of the United States Constitution.

139.   Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.


## SECOND CAUSE OF ACTION - *EX POST FACTO*

## VIOLATION OF Nebraska Constitution Article I § 16

140.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

141.   This claim is brought by Plaintiffs Doe 1 through 20 against all Defendants.

142.   The Act violates the Nebraska prohibition against *ex post facto* punishment for the same reason that it violates the Constitution of the United States.

143.   Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

36

## THIRD CAUSE OF ACTION - DOUBLE JEOPARDY

## VIOLATION OF U.S. Constitutional Amendment V UNDER 42 U.S.C. § 1983

144.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

145.   Pursuant to 42 U.S.C. § 1983, this claim is brought by Plaintiff Doe 1 through 20 against all Defendants.

146.   Through the Legislature's intent, the New Act is punitive and constitutes an additional punishment for said Plaintiffs' offenses.

147.   Also by its effect, the New Act is punitive and constitutes an additional punishment for said Plaintiffs offenses.

148.   Such creation and enforcement of these additional punishments places said Plaintiffs in jeopardy of being twice punished for a single offense, in derogation of the Double Jeopardy Clause of the United States Constitution.

149.   Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## FOURTH CAUSE OF ACTION - DOUBLE JEOPARDY

## VIOLATION OF Nebraska Constitution Article I § 12

150.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

151.   This claim is brought by Plaintiff Doe 1 through 20 against all Defendants.

152.   The Act violates the Nebraska prohibition against double jeopardy for the same reason that it violates the Constitution of the United States.

153.   Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## FIFTH CAUSE OF ACTION – CRUEL AND UNUSUAL PUNISHMENT

## VIOLATION OF U.S. Constitutional Amendment VIII UNDER 42 U.S.C. § 1983

154.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

155.   Pursuant to 42 U.S.C. § 1983, this claim is brought by Plaintiff Doe 1 through 20  against

all Defendants.

156. Through the Legislature's intent and through its effects, the New Act is punitive and permits punishment for said Plaintiffs that is both cruel and unusual.

157. Such creation and enforcement of the New Act places said Plaintiffs in risk of infliction of cruel and unusual punishment, in derogation of the Cruel and Unusual Punishment Clause of the United States Constitution.

158. Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## SIXTH CAUSE OF ACTION – CRUEL AND UNUSUAL PUNISHMENT VIOLATION OF Nebraska Constitution Article I § 9

159. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

160. This claim is brought by Plaintiff Doe 1 through 20 against all Defendants.

161. The Act violates the Nebraska prohibition against cruel and unusual punishment for the same reason that it violates the Constitution of the United States.

162. Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## SEVENTH CAUSE OF ACTION - UNREASONABLE SEARCH AND SEIZURE VIOLATION OF U.S. Constitutional Amendment IV UNDER 42 U.S.C. § 1983

163. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

164. Pursuant to 42 U.S.C. § 1983, this claim is brought by all Plaintiffs.

165. Said Plaintiffs have a reasonable and legitimate expectation of privacy in their residences, computers, electronic communication devices, communications, and their respective persons.

166. The New Act authorizes the search and seizure and monitoring of said Plaintiffs' residences, computers, electronic communication devices, and person without valid consent or prior judicial authorization by way of a warrant, supported probable cause and

affidavit.

167.    Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## EIGHTH CAUSE OF ACTION - UNREASONABLE SEARCH AND SEIZURE
### VIOLATION OF Nebraska Constitution Article I § 7

168.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

169.    This claim is brought by all Plaintiffs.

170.    The Act violates the Nebraska prohibition against unreasonable search and seizure for the same reason that it violates the Constitution of the United States.

171.    Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## NINTH CAUSE OF ACTION - DUE PROCESS
### VIOLATION OF U.S. Constitutional Amendment XIV UNDER 42 U.S.C. § 1983

172.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

173.    Pursuant to 42 U.S.C. § 1983, this claim is brought by all Plaintiffs against all Defendants.

174.    The New Act is vague and ambiguous and fails to sufficiently define who is subject to the Act, the conduct that is prohibited, information subject to registration, and the requirements under the Act with sufficient definiteness such that ordinary people can understand the obligations under the Act.

175.    The New Act encourages arbitrary and discriminatory enforcement, does not permit flexibility or reasonable breadth, and does not use ordinary terms in common usage and understanding which permit adequate interpretation.

176.    The New Act violates Substantive Due Process by infringing on fundamental right to defend one's reputation, the integrity of a family, right to travel, right to earn a living, and the right to privacy of information, without adequate justification.

177.    The New Act eradicates fundamental rights but fails to provide adequate procedures.

178.    The New Act fails to rationally further any legitimate government interest.

179.    Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## TENTH CAUSE OF ACTION - DUE PROCESS
## VIOLATION OF Nebraska Constitution Article I § 3

180.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

181.    This claim is brought by all Plaintiffs against all Defendants.

182.    The New Act violates the Due Process Clause of the Nebraska Constitution for the same reasons that it violates the Constitution of the United States.

183.    Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## ELEVENTH CAUSE OF ACTION - EQUAL PROTECTION
## VIOLATION OF U.S. Constitutional Amendment XIV UNDER 42 U.S.C. § 1983

184.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

185.    Pursuant to 42 U.S.C. § 1983, this claim is brought by all Plaintiffs against all Defendants.

186.    The New Act infringes on those fundamental rights of said Plaintiffs previously addressed.

187.    The New Act is irrational, designed only to single out, target and burden an unpopular group, and operates contrary to its intended purpose.

188.    Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## TWELFTH CAUSE OF ACTION - EQUAL PROTECTION

## VIOLATION OF Nebraska Constitution Article I § 3

189.  Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

190.  This claim is brought by all Plaintiffs against all Defendants.

191.  The New Act violates the Equal Protection clause of the Nebraska Constitution for the same reasons that it violates the Constitution of the United States.

192.  Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## THIRTEENTH CAUSE OF ACTION – SPECIAL LEGISLATION

## VIOLATION OF Nebraska Constitution Article III § 18

193.  Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

194.  This claim is brought by all Plaintiffs against all Defendants.

195.  The New Act violates the Special Legislation clause of the Nebraska Constitution by creating an arbitrary and unreasonable method of classification, without reasonable distinction or substantial difference, creates classifications that are illusive and not real, based on distinctions without a substantial difference, and, notwithstanding the Legislature's punitive purpose in creating the class, there is no substantial difference of circumstances between those to suggest the expediency of diverse legislation.

196.  Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## FOURTEENTH CAUSE OF ACTION - FREEDOM OF SPEECH

## VIOLATION OF U.S. Constitutional Amendment I UNDER 42 U.S.C. § 1983

197.  Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

198.  Pursuant to 42 U.S.C. § 1983, this claim is brought by all Plaintiffs.

199.  The New Act violates the right to free speech guaranteed by the United States Constitution in that it suppresses speech by certain individuals from occurring, and

41

criminalizes and prohibits speech in advance via social network websites, instant messaging, or chat rooms, thereby constituting a prior restraint.

200. The New Act is also vague and overbroad in its prohibition on speech, and it operates to chill other speech through the constant monitoring of electronic communication by law enforcement.

201. Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## FIFTEENTH CAUSE OF ACTION - FREEDOM OF SPEECH
## VIOLATION OF Nebraska Constitution Article I § 5

202. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

203. This claim is brought by all Plaintiffs.

204. The New Act violates the right to free speech guaranteed by the Nebraska Constitution for the same reasons that it violates the Constitution of the United States.

205. Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## SIXTEENTH CAUSE OF ACTION - CONTRACTS CLAUSE
## VIOLATION OF U.S. Constitution Article I § 10 UNDER 42 U.S.C. § 1983

206. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

207. On information and belief, this claim is brought by Plaintiffs Doe 2, 3, 4, 7, 9 through 15, 17, 19, and 20 against all Defendants pursuant to 42 U.S.C. § 1983.

208. Pursuant to Nebraska law, some Plaintiffs entered into a contract when they entered into a plea agreement for an offense.

209. As part of said agreement, the Plaintiffs understood that his or her obligation to register would be for a specific period of time and each would have an opportunity to submit evidence for community notification purposes.

210. Said Plaintiffs reasonably relied on the registration duration requirements, and the

particular registration period and tiered notification structure were consideration for said Plaintiffs to enter their pleas.

211. This understanding gave rise to a vested right in said Plaintiffs within the purview of the Contracts Clause of the United States Constitution.

212. The New Act will substantially impair said Plaintiffs preexisting contractual relationship with the State by imposing new terms which were not negotiated and agreed-to, and will operate to either significantly increase supervision by law enforcement in both nature and duration, and/or subject said Plaintiffs to community notification.

213. Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## SEVENTEENTH CAUSE OF ACTION - CONTRACTS CLAUSE
## VIOLATION OF Nebraska Constitution Article I § 16

214. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

215. On information and belief, this claim is brought by Plaintiffs Doe 2, 3, 4, 7, 9 through 15, 17, 19, and 20 against all Defendants.

216. The Act violates the Contracts Clause of the Nebraska Constitution for the same reason that it violates the Constitution of the United States.

217. Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## EIGHTEENTH CAUSE OF ACTION - SEPARATION OF POWERS
## VIOLATION OF Nebraska Constitution Article II § 1

218. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

219. This claim is brought by Plaintiffs Doe 1 through 20 against all Defendants.

220. The New Act violates the separation of powers mandated by the Nebraska Constitution as it alters previous final judicial orders, operates to vacate existing judgments and sentences regarding the determination of registrant's risk to reoffend, effectively

reclassifies all registrants as Tier III registrants with a high risk to reoffend, and reverses final court orders relating to the length of time that each offender must register.

221. Each said Plaintiff has been, or will imminently be, subject to irreparable injury by this constitutional violation, and the Plaintiffs are entitled to declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court grant them the relief as requested:

A. A declaration that LB 97 and LB 285 violate, both facially and as applied, the *ex post facto* clause of the United States Constitution;

B. A declaration that LB 97 and LB 285 violate, both facially and as applied, the *ex post facto* clause of the Nebraska Constitution;

C. A declaration that LB 97 and LB 285 violate, both facially and as applied, the double jeopardy clause of the United States Constitution;

D. A declaration that LB 97 and LB 285 violate, both facially and as applied, the double jeopardy clause of the Nebraska Constitution;

E. A declaration that LB 97 and LB 285 violate, both facially and as applied, the cruel and unusual punishment clause of the United States Constitution;

F. A declaration that LB 97 and LB 285 violate, both facially and as applied, the cruel and unusual punishment clause of the Nebraska Constitution;

G. A declaration that LB 97, as amended by LB 285, violates, both facially and as applied, the search and seizure clause of the United States Constitution;

H. A declaration that LB 97, as amended by LB 285, violates, both facially and as applied, the search and seizure clause of the Nebraska Constitution;

I. A declaration that LB 97 and 285 violate, both facially and as applied, the due process clause of the United States Constitution;

J. A declaration that LB 97 and 285 violate, both facially and as applied, the due process clause of the Nebraska Constitution;

K. A declaration that LB 97 and 285 violate, both facially and as applied, the equal

44

protection clause of the United States Constitution;

L. A declaration that LB 97 and 285 violate, both facially and as applied, the equal protection clause of the Nebraska Constitution;

M. A declaration that LB 97 and 285 violate, both facially and as applied, the special legislation clause of the Nebraska Constitution;

N. A declaration that LB 97 and 285 violate, both facially and as applied, the freedom of speech guaranteed by the United States Constitution;

O. A declaration that LB 97 and 285 violate, both facially and as applied, the freedom of speech guaranteed by the Nebraska Constitution;

P. A declaration that LB 97 and 285 violate, both facially and as applied, the contracts clause of the United States Constitution;

Q. A declaration that LB 97 and 285 violate, both facially and as applied, the contracts clause of the Nebraska Constitution;

R. A declaration that LB 97 and 285 violate, both facially and as applied, the separation of powers doctrine of the Nebraska Constitution;

S. A preliminary injunction prohibiting each Defendant from enforcing LB 97 and LB 285 during the pendency of this matter;

T. A permanent injunction prohibiting each Defendant from enforcing LB 97 and LB 285;

U. Reasonable attorney fees; and

V. Other and further relief the Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury for all causes of action.

DATED:  December 16, 2009.

John Doe and Jane Doe 1 through 20,
John Doe and Jane Doe A through K,
Doe 12 on behalf of Does H and K, minors, and
Doe G on behalf of Doe I, minor,

Plaintiffs,

BY:   _s/ Stuart J. Dornan_____
Stuart J. Dornan, #18553
Jason E. Troia, #21793
Rodney C. Dahlquist, Jr., #23912
Blake Richards, #24705
Dornan, Lustgarten & Troia, PC LLO
1403 Farnam Street, Suite 232
Omaha, Nebraska 68102
(402) 884-7044
Attorneys for Plaintiffs