IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN DOE and JANE DOE 1 through 20, JOHN DOE and JANE DOE A through K, DOE 12 on behalf of DOES H and K, minors, and DOE G on behalf of DOE I, minor,<br><br>           Plaintiffs,<br><br>      v.<br><br>STATE OF NEBRASKA, et al.,<br><br>           Defendants. | 8:09CV456<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs attack amendments to Nebraska's Sex Offender Registration Act that become effective January 1, 2010. With exceptions noted below, I decide that a preliminary injunction is unwarranted. By and large, Nebraska has only done what Congress (and the Attorney General of the United States pursuant to a delegation from Congress) permitted or required.

*The exceptions:* In the interim, Nebraska will not be allowed to enforce the following statutes against persons who have been convicted of sex offenses but who have completed their criminal sentences and who are not on probation, parole, or court-ordered supervision, to wit:

(1) Neb. Rev. Stat. § 29-4006(2) (West, Operative January 1, 2010) (requiring consent to search and installation of monitoring hardware and software) and

(2) Neb. Rev. Stat. § 28-322.05 (West, Operative January 1, 2010) (making it a crime to use Internet social networking sites accessible by minors by a person required to register under the Sex Offender Registration Act).

## *I. Background*

This suit was filed on December 16, 2009. Injunctive and declaratory relief are sought. The action is brought by several plaintiffs who have been convicted of sexual offenses. Many of the plaintiffs are currently registered under the Nebraska Sex Offender Registration Act. With one exception, counsel for the plaintiffs has represented that none of these plaintiffs are currently the subject of a criminal prosecution or a probation revocation or similar dispute. Counsel has also represented that at least some of these plaintiffs who have been convicted of sexual offenses have served their time and are no longer on probation or parole or court supervision, although they may remain required to register.

Certain plaintiffs are not offenders, but they are associated with other plaintiffs who have been convicted of sexual offenses. For example, one of the plaintiffs is a lawyer who employs one of the other plaintiffs convicted of a sexual offense; another is a mother who lives with a son who has been convicted of a sexual offense; and yet another is a spouse who lives and conducts business with her husband who has been convicted of a sexual offense.

The suit seeks to prohibit enforcement of portions of Nebraska Legislative Bill 285 (Approved by the Governor May 29, 2009) ([LB 285](#)) and Nebraska Legislative Bill 97 (Approved by the Governor May 20, 2009) ([LB 97](#)). These changes amended Nebraska's Sex Offender Registration Act and related statutes and, with certain exceptions, go into effect on January 1, 2010. *See* [LB 285 § 14](#). Although both bills were passed during the same year, they were not passed at the same time. [LB 97](#) was passed first. [LB 285](#) was passed second. Because [LB 285](#) amends [LB 97](#), one must read both bills together to understand the changes to the law.

The specific statutes that are challenged by Plaintiffs, and an abbreviated summary of the reasons for the challenge, are set forth below:

Neb. Rev. Stat. §§ 29-4001.01 through 4006, and 4009 through 4013[1] amount to the ex post facto imposition of punishment;

Neb. Rev. Stat. § 29-4006 provides for unreasonable searches and seizures;

Neb. Rev. Stat. §§ 29-4009 and 4013 unreasonably eliminate individual assessments to determine the level of community notification and unreasonably impose website notification for all registrants;

Neb. Rev. Stat. § 29-4001.01 employs vague definitions, making the laws susceptible to arbitrary enforcement and inadvertent noncompliance;

Neb. Rev. Stat. § 28-322.05[2] creates a new crime and wrongly criminalizes certain types of speech and infringes upon the right of association; and

Neb. Rev. Stat. §§ 29-4001.01 through 4006, and 4009 through 4013 improperly and retroactively modify the terms and conditions of plea agreements and violate separation of powers doctrine.

(*See* Filing 1, Complaint at CM/ECF p. 4 n.1.)

The defendants are the State of Nebraska, the Nebraska Attorney General, the Nebraska State Patrol, the Superintendent of the State Patrol, local prosecutors

---

[1] The challenged versions of Neb. Rev. Stat. §§ 29-4001.01, 29-4004, 29-4005, 29-4006, 29-4007, 29-4009, 29-4011, and 29-4013 become operative January 1, 2010. For a codification of Nebraska's Sex Offender Registration Act both before and after January 1, 2010, *see* Volume 7B, *Revised Statutes of Nebraska Annotated*, Chapter 29 pp. 675-712 (Lexis/Nexis) (2009 Replacement Vol.).

[2] There is a technical argument that this new crime inadvertently became operative in 2009. However, Nebraska's Attorney General has represented that the law does not become operative until January 1, 2010. I proceed on that assumption.

(county attorneys), and various local law enforcement officers (county sheriffs and chiefs of police).

Despite the fact that Plaintiffs challenge state law, an understanding of federal law is critical. The Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, was enacted on July 27, 2006. Title I of the Act, entitled the Sex Offender Registration and Notification Act ("SORNA"), creates a national sex offender registry law. In addition to defining the term "sex offender" and addressing the various tiers of sex offender status, 42 U.S.C. § 16911, SORNA also requires every jurisdiction to maintain a sex offender registry conforming to the requirements of SORNA. 42 U.S.C. § 16912. It also requires that each state impose a criminal penalty "greater than 1 year" for failing to comply with the state registration requirement. 42 U.S.C. § 16913(e).

If a state fails to comply with SORNA, it loses federal funds. 42 U.S.C. § 16925. The threat of losing federal funds was a major motivator for the adoption of the legislative bills that are challenged in this case. The fear of losing the federal money was not, however, the only motivator. As discussed more fully later, Nebraska also enacted two amendments that were not required or contemplated by SORNA, and those are the amendments enjoined by this decision.

At a minimum, SORNA requires sex offenders to provide information disclosing their name and aliases, Social Security number, residence, place of employment and/or school, and vehicle information. 42 U.S.C. § 16914(a)(1)-(7). Every jurisdiction must also include in the sex offender registry the sex offender's physical description, criminal history, current photographs, fingerprints and palm prints, DNA sample, and a photocopy of a driver's license or identification card. 42 U.S.C. § 16914(b)(1)-(8).

Certain information about *"each"* sex offender must be published on a jurisdictional website, and each jurisdiction's website must contain full field search capabilities for participation in the National Sex Offender Public Website, which is maintained by the Attorney General. *See* 42 U.S.C. §§ 16918(a), 16920(b) (emphasis added). States have the *option* to "exempt from disclosure . . . any information about a tier I sex offender convicted of an offense other than a specified offense against a minor . . . ." 42 U.S.C. § 16918(c) ("Optional exemptions").

In addition to the foregoing information, sex offenders must provide information regarding "those Internet identifiers the sex offender uses or will use of any type that the Attorney General determines to be appropriate . . . ." 42 U.S.C. § 16915a. This information is then made available to "social networking sites" so that such sites can compare user identifiers that become available when someone logs on to the site with identifiers made available to those sites through the Sex Offender Registry. 42 U.S.C. § 16915b.[3] Essentially, this provision permits the matching of numbers or characters, but no personal data is disclosed. Under SORNA and related federal laws, sex offenders are not barred from accessing these "social networking sites."

Sex offenders are placed in three "tiers" under SORNA. 42 U.S.C. § 16911(2), (3). Regardless of the tier, all sex offenders must register initially following conviction. 42 U.S.C. § 16913(b). Thereafter, and no later than three business days after changes in name, residence, employment, or student status, all sex offenders, regardless of tier, must *"appear in person"* and update his or her registration so that it is current. 42 U.S.C.§ 16913(c) (emphasis added). Still further, a sex offender must *"appear in person,"* allow a photograph to be taken, and verify registry

---

[3] 42 U.S.C. § 16915a and 42 U.S.C. § 16915b were added in 2008 after SORNA, but they are codified with SORNA. *See* "Codification" discussion in United States Code Annotated, Supplementary Pamphlet, at pp. 386-87, 389 (West 2009).

information once each year if the offender is a tier I sex offender, every six months if the offender is a tier II sex offender, and every three months if the offender is a tier III sex offender. 42 U.S.C. § 16916 (emphasis added). The duration of the registration requirement is 15 years for the first tier of sex offenders, 25 years for the next tier, and life for the third tier. 42 U.S.C. § 16915(a).

As required by SORNA, 42 U.S.C. §16912(b), the Attorney General of the United States has published guidance to interpret and implement the law. *See* The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. § 38030-01 (July 2, 2008) (hereinafter *National Guidelines,* 2008 WL 2594934). Among other things, those National Guidelines make it clear that SORNA sets a floor and not a ceiling for the states. That is, while the states must enact the minimum federal requirements, "SORNA does not bar jurisdictions from adopting additional regulation of sex offenders for the protection of the public, beyond the specific measures that SORNA requires." *National Guidelines,* 2008 WL 2594934, at *38034.

The Attorney General has also made it clear that SORNA applies to sex offenders whose convictions occurred *prior* to the adoption of SORNA. The Attorney General has concluded that there is no "ex post facto" problem:

> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment. See 72 FR 8894, 8895-96 (Feb. 28, 2007); 28 CFR 72.3. The application of the SORNA standards to sex offenders whose convictions predate SORNA creates no ex post facto problem "because the SORNA sex offender registration and notification requirements are intended to be non-punitive, regulatory measures adopted for public

safety purposes, and hence may validly be applied (and enforced by criminal sanctions) against sex offenders whose predicate convictions occurred prior to the creation of these requirements. See *Smith v. Doe*, 538 U.S. 84 (2003)." 72 FR at 8896.

*National Guidelines,* 2008 WL 2594934, at *38046.

For a helpful and detailed comparison of Nebraska's law (as amended by LB 97 and LB 285) and the Adam Walsh Child Protection and Safety Act of 2006, see Appendix I to Filing 57-1, at CM/ECF pp. 1-42. For a similarly helpful and detailed comparison of Nebraska's law, before and after LB 97 and LB 285, see Appendix II to Filing 57-2, at CM/ECF pp. 1-18. In general, and with the exceptions discussed more fully later in this opinion, the legislative changes wrought by LB 97 and LB 285 do not do much more than bring Nebraska into compliance with SORNA.

Because there was very little time between when suit was filed and when these laws became operative on January 1, 2010, a rapid preliminary injunction hearing was scheduled. That hearing was held and concluded on December 23, 2009.

Counsel for the plaintiffs presented the declarations of the plaintiffs that had been filed earlier. (Filing 6, Evidence Index & Affidavits.) Plaintiffs also presented the testimony of Dr. Lisa M. Sample, Ph.D. Dr. Sample is an Associate Professor of Criminology at the University of Nebraska at Omaha. Summarized and condensed, Dr. Sample criticized Nebraska's new law because it did not employ an individualized assessment of risk similar to the method used under Nebraska's old law. Counsel for Defendants presented the declarations of various individuals. (Filings 58-66, Evidence Index & Affidavits.)

During the hearing, I granted Plaintiffs' Motion for Leave to Use Fictitious Names. (*See* Filing 2.) However, I required that Plaintiffs' counsel provide the true names of the plaintiffs to defense counsel, and I also required that Plaintiffs' counsel

provide defense counsel with copies of the signature pages of each declaration showing that the declarations had been signed under penalty of perjury. Plaintiffs' counsel complied with my order.

Recognizing the time constraints on the parties and the preliminary nature of these proceedings, I also overruled the defendants' evidentiary objections (filing 54) to Plaintiffs' declarations. That said, I gave Defendants a limited opportunity to compare the true names of the plaintiffs with records maintained by the defendants in order to investigate whether there were serious standing or other related issues raised by such an investigation. As of the date of this opinion, I have heard nothing from Defendants to suggest any such concerns. However, Defendants did file an affidavit on December 24, 2009, that gives background data on Does 1-20. (Filing 81.) That affidavit confirms that certain of the Does are active registrants who are no longer on probation, parole, or court-ordered supervision. (*E.g.*, John Doe # 1, Filing 81 at CM/ECF p. 1.)

## *II. Analysis*

The relevant factors to consider when assessing the propriety of preliminary injunctive relief include: (1) the likelihood of success on the merits; (2) the presence or risk of irreparable harm; (3) the balancing of the harms of granting or denying an injunction; and (4) the public's interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "The party seeking injunctive relief bears the burden of proving these factors." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). "A district court has broad discretion when ruling on preliminary injunction requests . . . ." *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004).

*In General, Plaintiffs Are Not Entitled to Preliminary Relief*

Certain things are unquestionably true when it comes to sex offender registration laws. First, the federal courts, and, most importantly, the United States Supreme Court, have consistently upheld state sex offender registration statutes as against claims that they are unconstitutional. *See*, *e.g.*, *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003) (upholding registry against procedural due process challenge)*; Smith v. Doe*, 538 U.S. 84 (2003) (finding Alaska's sex offender registration laws constitutional despite claim that those laws were both retroactive and punitive and therefore violated the Ex Post Facto Clause). Second, the federal courts have consistently upheld SORNA as against claims that it is unconstitutional. *See*, *e.g.*, *United States v. Howell,* 552 F.3d 709, 717 (8th Cir. 2009) (finding that section of SORNA containing underlying registration requirements was valid exercise of congressional power under Necessary and Proper Clause; registration requirements were appropriate and reasonably adapted means by Congress to attain legitimate end of monitoring and regulating interstate movement of sex offenders); *United States v. May*, 535 F.3d 912 (8th Cir. 2008) (holding that SORNA does not violate the Ex Post Facto Clause, the Commerce Clause, or the non-delegation doctrine). Thus, any attack on sex offender registration laws must be judged against a federal legal landscape that is unfriendly to Plaintiffs.[4]

Most of the amendments challenged by Plaintiffs are well within the SORNA framework. For example, Nebraska requires the offender to appear in person at various times, and this requirement mirrors SORNA. 42 U.S.C.§§ 16913(c), 16916.

---

[4] I also agree with Nebraska's counsel that Nebraska follows federal precedents when construing its constitution. *See*, *e.g.*, *State v. Worm*, 680 N.W.2d 151, 160-63 (Neb. 2004) (applying federal ex post facto principles). Thus, any challenge on state constitutional grounds is likely to be resolved by application of federal cases. As a result, Plaintiffs are not likely to fare any better by basing their claims on Nebraska's constitution.

*See also Doe v. Pataki*, 120 F.3d 1263, 1284-85 (2nd Cir. 1997) (finding that registration provisions of New York's Sex Offender Registration Act (SORA), or "Megan's Law," imposing duty to register in person every 90 days for minimum of ten years, did not inflict "punishment" within meaning of Ex Post Facto Clause; registration served legislature's nonpunitive goals of facilitating law enforcement and protecting public; and burdens of registration were not so punitive in form or effect as to constitute punishment). Likewise, Nebraska has chosen to publicize the names of anyone who must register as a sex offender, and not just some of those persons. SORNA does the same thing, but it gives states an option to exempt certain offenders. *Compare* 42 U.S.C. § 16918(a) *with* 42 U.S.C. § 16918(c). Nebraska has elected not to use that option, and there is nothing unconstitutional about such a choice. Furthermore, as the Attorney General of the United States contemplated would happen, Nebraska's amendments also make adjustments to take into account local concerns, and that is perfectly acceptable. *See*, *e.g.*, *National Guidelines*, 2008 WL 2594934, at *38031 ("Some commenters raised questions about in-state registration requirements, such as whether a sex offender who resides in one county and is employed in another would have to register in both counties. The answer is that this is a matter of state discretion."). Likewise, Nebraska has generally elected to use an "offense of conviction" methodology, as opposed to examining the crime facts when determining registration requirements, and that is clearly permissible under SORNA. *Id.* (stating that "jurisdictions are not required by SORNA to look beyond the elements of the offense of conviction in determining registration requirements"). In a similar vein, Nebraska, like SORNA, eschews the use of "risk assessments" as the primary method of determining sex offender registration or notification requirements. *Id.* ("Some commenters asked whether a jurisdiction could be considered to have substantially implemented the SORNA requirements if the jurisdiction globally dispensed with those requirements and instead based sex offender registration or notification on individualized risk assessments of sex offenders. The answer is no . . . .").

In short, and except as noted below, Plaintiffs have not established a basis for preliminary injunctive relief regarding the legislative changes to Nebraska's registry laws enacted by LB 97 and LB 285. Plaintiffs are not likely to succeed on the merits. The public interest strongly tilts in favor of Defendants. While some Plaintiffs may suffer injury, the balance of the harms favors the public safety, health, and welfare interests that Defendants represent. Nebraska's compliance with federal law is important and the plaintiffs' policy disagreements are less so.

It is worth emphasizing that Plaintiffs have virtually no federal case law[5] that supports their generalized attack on Nebraska's amendments. In this regard, Plaintiffs' citation to the unpublished order in *ACLU of Nevada v. Masto*, No. 2:08CV822, JCM-PAL, Filing 77 (D. Nev. Oct. 7, 2008) (entitled "Revised Permanent Injunction") is entirely unpersuasive. That order was *not* drafted by the judge who signed it. On the contrary, and as shown by the document itself, the order was drafted by counsel for the ACLU, and it contains only a conclusory explanation of the judge's reasoning. (*See* Filing 77 in Case No. 2:08CV822.)[6] Indeed, the order fails to cite even one case.

In summary, absent clear federal precedent supporting their position, Plaintiffs will not be heard to claim that Nebraska violated the Constitution because it has done what Congress and the Attorney General of the United States contemplated or required. Bluntly put, I am unwilling to allow this suit to become a back-handed way of neutering SORNA.

---

[5]With respect, I find the cases cited by Plaintiffs from other state courts like those from Alaska, Maine, and Indiana to be of very little value in understanding federal law.

[6]I have searched the electronic docket of that case and find no written opinion or transcript explaining the *judge's* reasoning.

*In Two Respects, Nebraska Has Probably Gone Too Far*

By adding two provisions to the registry framework that are entirely foreign to SORNA, Nebraska has come perilously close to voiding the entire law for offenders who have served their time and who are no longer subject to probation, parole, or other court-ordered supervision. These two provisions, when taken together, threaten to take a civil regulatory scheme and turn it into a punitive endeavor. For those that have done their time, the Ex Post Facto Clause of the Constitution[7] very likely bars retroactive application of these changes.[8] Moreover, and looking at each amendment separately, one change unquestionably violates the Fourth Amendment (as Nebraska concedes), and the other has the potential to adversely implicate the First Amendment.

When a person registers under Nebraska law, he or she is required to give a list of all "email addresses, instant messaging identifiers, chat room identifiers, global unique identifiers, and other Internet communication identifiers that the person uses or plans to use, all domain names registered by the registrant, and all blogs and Internet sites maintained by the person or to which the person has uploaded any content or posted any messages or information." Neb. Rev. Stat. § 29-4006(1)(s) (West, Operative January 1, 2010). To a degree, the demand for this information is

---

[7]U.S. Const. art. I, § 10, cl. 1, provides, among other things, that: "No State shall . . . pass any . . . ex post facto Law . . . ." Among other ways of doing so, a law violates this provision when it applies to events occurring before the law's enactment and the law disadvantages an offender, such as by increasing the punishment for a crime. *See*, *e.g.*, *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (holding that a statute retroactively canceling provisional release credits violates the Ex Post Facto Clause).

[8]Luckily for Nebraska, both amendments appear to be severable. *See* LB 97 § 33. It should be noted that LB 285 does not appear to have repealed the severability clause found in LB 97. That is, LB 285 dealt with sections 14, 24, 25, 26, and 27 of LB 97 and not section 33 of LB 97, which contains the severability clause. *See* LB 285 (Introductory Statement).

consistent with SORNA. *See* 42 U.S.C § 16914(a), (b); *National Guidelines*, 2008 WL 2594934, at *38042.[9]

However, Nebraska went much further and added a "consent to search" and "monitoring" requirement, to wit:

> When the person provides any information under subdivision (1)(k) or (s) of this section, the registrant shall sign a consent form, provided by the law enforcement agency receiving this information, authorizing the:
>
> (a) Search of all the computers or electronic communication devices possessed by the person; and
>
> (b) Installation of hardware or software to monitor the person's Internet usage on all the computers or electronic communication devices possessed by the person.

Neb. Rev. Stat. § 29-4006(2) (West, Operative January 1, 2010).

In addition to the "consent to search" and "monitoring" requirement, Nebraska—and, again, unlike SORNA—has now made it a crime for certain offenders who must register to access certain Internet sites. That is:

> (1) Any person required to register under the Sex Offender Registration Act who is required to register because of a conviction for one or more of the following offenses, including any substantially

---

[9] Certain Internet identifier information allows "social networking sites" to receive notice from the Attorney General of Internet identifier matches. 42 U.S.C. § 16915b ("The Attorney General shall establish and maintain a secure system that permits social networking websites to compare the information contained in the National Sex Offender Registry with Internet identifiers of users of the social networking websites, and view only those Internet identifiers that match.") Unlike Nebraska, SORNA does not bar registered offenders from accessing such sites.

equivalent offense committed in another state, territory, commonwealth, or other jurisdiction of the United States, and who knowingly and intentionally uses a social networking web site, instant messaging, or chat room service that allows a person who is less than eighteen years of age to access or use its social networking web site, instant messaging, or chat room service, commits the offense of unlawful use of the Internet by a prohibited sex offender:

    (a) Kidnapping of a minor pursuant to section 28-313;

    (b) Sexual assault of a child in the first degree pursuant to section 28- 319.01;

    (c) Sexual assault of a child in the second or third degree pursuant to section 28-320.01;

    (d) Incest of a minor pursuant to section 28-703;

    (e) Pandering of a minor pursuant to section 28-802;

    (f) Visual depiction of sexually explicit conduct of a child pursuant to section 28-1463.03 or 28-1463.05;

    (g) Possessing any visual depiction of sexually explicit conduct pursuant to section 28-813.01;

    (h) Criminal child enticement pursuant to section 28-311;

    (i) Child enticement by means of an electronic communication device pursuant to section 28-320.02;

    (j) Enticement by electronic communication device pursuant to section 28-833; or

    (k) An attempt or conspiracy to commit an offense listed in subdivisions (1)(a) through (1)(j) of this section.

>    (2) Unlawful use of the Internet by a prohibited sex offender is a Class I misdemeanor for a first offense. Any second or subsequent conviction under this section is a Class IIIA felony.

Neb. Rev. Stat. § 28-322.05 (West, Operative January 1, 2010).

Thus, for offenders who must register, but who have served their sentences and are no longer on probation, parole, or court-ordered supervision at the time these new laws become effective, they face onerous new restrictions on their daily lives. They are burdened with the obligation to consent to the search of any computer they possess; they are required to allow the installation of software and hardware monitoring equipment on computers they possess; and many of them are prohibited, upon pain of an additional prison sentence, from using social networking websites, instant messaging services, or chat room service. When these restrictions are coupled with the fact that all registrants are also required to report in person, sometimes more frequently than once a year, it is likely that Nebraska's registration scheme, when applied retroactively to citizens who have completed their criminal sentences and who are no longer on probation, parole, or court-ordered supervision, violates the Ex Post Facto Clause of the Constitution. See *Smith v. Doe*, 538 U.S. at 101 (holding that Alaska registration scheme did not violate Ex Post Facto Clause because registrant was "free to . . . live . . . as other citizens, *with no supervision*") (emphasis added). Put more simply, Nebraska has now retroactively imposed a probation-like regimen that is nearly identical to the supervised release orders I enter on a daily basis for federal criminal defendants who have committed "kiddie porn" crimes. In either context, those restrictions are clearly "punishment."

To be clear, like the Attorney General of the United States, I do not equate the SORNA requirement that a registrant report in person (and provide a limited amount of information) as the equivalent of "supervision" within the meaning of *Smith v. Doe*. See *National Guidelines*, at 2008 WL 2594934, at *38046 (concluding that SORNA was consistent with *Smith v. Doe*). See also *Pataki*, 120 F.3d at 1284-85

(registration provisions of New York's sex offender registration law imposing duty to register in person every 90 days for minimum of ten years, did not inflict "punishment" within meaning of Ex Post Facto Clause). On the other hand, I do equate an in-person reporting requirement, when coupled with invasive consent to search, electronic monitoring, and Internet prohibition provisos, to be "supervision" within the meaning of *Smith v. Doe*.

*So, here's the point:* It is probable that Plaintiffs will succeed on the merits of their Ex Post Facto Clause claim regarding these two amendments. In evaluating the validity of this conclusion, please observe that Nebraska was unable to give me any comparable legislation that had passed constitutional muster. Instead, Nebraska candidly conceded that the "consent to search" requirement violated the Fourth Amendment. (*E.g.*, Filing 57 at CM/ECF p. 22 ("We begin by acknowledging that the consent to search of all computers or electronic communication devices that is required under LB 97 and LB 285 is likely not legally valid under the requirements of the Fourth Amendment, as applied to individuals no longer on parole, probation or court supervision.").) That concession was compelled by Judge Hamilton's thorough and thoughtful opinion in *Doe v. Prosecutor, Marion County, Indiana*, 566 F. Supp. 2d 862, 883 (S.D. Ind. 2008) (holding requirement in Indiana sex and violent offender registration statute that offenders not currently on parole or probation consent to warrantless searches of personal computers or devices with Internet capability at any time, or be subject to felony prosecution, violated Fourth Amendment and stating that Indiana's legislature had "taken an unprecedented step in stripping plaintiffs of their right to be secure in their homes, 'papers,' and personal effects.").

I should also add that there are serious First Amendment issues raised by Nebraska's attempt to prohibit offenders from using Internet sites when those offenders have served their sentences and are no longer under criminal law supervision. *See*, *e.g.*, *Hobbs v. County of Westchester*, No. 00Civ8170(JSM)(LMS),

2002 WL 31873462, at *11-12 (S.D.N.Y. Dec. 23, 2002) (holding, on First Amendment grounds, that county could not prohibit an amateur clown, who had been convicted of misdemeanor sexual abuse of children many years earlier, from using public park to perform his amateur show absent a narrowly drawn regulation).[10] For present purposes, nothing more need be written, and we can flesh out these First Amendment concerns later.

Having concluded that Plaintiffs are likely to prevail on their challenge to these two amendments under the Ex Post Facto Clause and the Fourth Amendment and that significant First Amendment concerns are evident, I also decide that the balance of the *Dataphase* factors predominates in Plaintiffs' favor as well. The federal government and all the other states are apparently able to get along quite well without these unprecedented but profoundly problematic powers. That being the case, interim injunctive relief is not likely to work any cognizable harm to Nebraska or its citizenry.

### III. Conclusion

The lawyers, particularly Mr. Dornan for Plaintiffs and Mr. Cookson for Nebraska, have done a wonderful job of presenting their respective positions in a thorough and understandable manner. In addition, they have been civil and professional, and that is always a plus. The foregoing said, we have been forced to

---

[10]Nebraska does not use the definition of "social networking site" found in 42 U.S.C. § 16915a(e)(1)(A)(ii), which includes a requirement that the site "offers a mechanism for communication with other users where such users are likely to include *a substantial number of minors*." (Emphasis added.) Instead, Nebraska refers to *any* "social networking website . . . that allows a person who is less than eighteen years of age to access or use" the site. Neb. Rev. Stat. § 28-322.05. *See also* Neb. Rev. Stat. § 29-4001.01(13) (West, Operative January 1, 2010).

do our work too rapidly. Under these circumstances, the possibility of error is great. I suppose that is why we call efforts like these *preliminary*.

A final observation is in order: I am not a fan of laws like this one. If I had my druthers, I would enjoin the entire law and not just the portions that are probably unconstitutional. I am pretty sure that this enactment will divert attention and money from policing the monsters[11] (and God knows there are plenty of monsters out there). I also worry that this law will incite a virulent form of vigilantism against the hapless. But, my likes and dislikes don't matter.

In a democracy, we have legislatures to make public policy choices, and a black robe does not legitimize nullification of those legislative decisions simply because I find them dumb or distasteful. On the contrary, "[i]f the people want to go to Hell, I will help them. It's my job."[12] Let's get at it!

IT IS ORDERED that the motion for a preliminary injunction (filing 4) is denied except as provided below:

1. Defendants are preliminarily enjoined from enforcing the following statutes against persons who have been convicted of sex offenses but who have completed their criminal sentences and who are not on

---

[11]Indeed, a former Douglas County Attorney (Mr. Dornan) and a former United States Attorney (Mr. Monaghan) appeared at the hearing to make just such an argument. They are serious thinkers who are not bleeding hearts. As an aside, I compliment them for taking this unpopular, but important, case.

[12]Oliver Wendell Holmes, Jr., quoted in Ronald K.L. Collins, *As Justice Holmes said . . . Oliver Wendell Holmes Jr. on free speech & related matters: selected quotations,* First Amendment Center (May 21, 2008) (letter to Harold Laski, May 13, 1919) at http://www.firstamendmentcenter.org/analysis.aspx?id=20074 (last accessed December 28, 2009).

probation, parole, or court-ordered supervision, to wit: (1) [Neb. Rev. Stat. § 29-4006(2) (West, Operative January 1, 2010)](#) (requiring consent to search and installation of monitoring hardware and software) and (2) [Neb. Rev. Stat. § 28-322.05 (West, Operative January 1, 2010)](#) (making it a crime to use Internet social networking sites accessible by minors by a person required to register under the Sex Offender Registration Act).

2. Within 10 days, Plaintiffs shall post a bond with the Clerk (cash or surety) in the sum of $500.

December 30, 2009.　　　　　　　　　　　　　BY THE COURT:
　　　　　　　　　　　　　　　　　　　　　　*Richard G. Kopf*
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

*This opinion may contain hyperlinks to other documents or Websites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Websites. Likewise, the court has no agreements with any of these third parties or their Websites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.